In re Thomas GILLINGHAM and JoAnn Willcox Gillingham, Debtors.

GORDON INVESTMENTS, INC., d/b/a Orr's Jewelers, Plaintiff,

v.

Thomas GILLINGHAM and JoAnn Willcox Gillingham, Defendants.

Thomas GILLINGHAM and JoAnn Willcox Gillingham, Plaintiffs,

v.

GORDON INVESTMENTS, INC., d/b/a Orr's Jewelers, Defendant.

Bankruptcy No. 89–2805–JLC.
Adv. Nos. 90–0029–BM, 91–0541–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 24, 1992.

Dennis J. Kusturiss, Vuono, Lavelle & Gray, Pittsburgh, Pa., for Gordon Investments, Inc. d/b/a Orr's Jewelers.

Dennis J. Spyra, Spyra & Lorenzo, Pittsburgh, Pa., for Thomas Gillingham and JoAnn Willcox Gillingham.

Carlota M. Bohm, Houston Harbaugh, P.C., Pittsburgh, Pa., Chapter 7 Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Gordon Investments, Inc., d/b/a Orr's Jewelers (hereinafter "plaintiff"), seeks an award of monetary damages in the amount of $106,000.00 in Adversary No. 90–029–BM. Plaintiff alleges that Thomas Gillingham and JoAnn Willcox Gillingham (hereinafter "debtors") purchased several articles of jewelry and reneged on their promise to pay for them at a specified time. Counts I and II of the complaint state claims for breach of contract and fraud, respectively. Plaintiff amended the complaint during trial to add an additional count against debtor

Joann Gillingham only for quasi-contract/unjust enrichment.

Debtor JoAnn Gillingham denies that she was a party to any of the transactions at issue. Debtors further insist that they paid in full for the articles of jewelry either at the time of delivery or in advance of their taking delivery.

Judgment will be entered in Adversary No. 90–029–BM in favor of plaintiff and against debtor Thomas Gillingham in the amount of $100,000.00. Judgment will also be entered in favor of plaintiff and against debtor JoAnn Gillingham, but only in the amount of $65,000.00.

Debtors have objected in Adversary No. 91–541–BM to a proof of claim in the underlying bankruptcy case by plaintiff Gordon in the amount of $111,518.56. They object to the proof of claim on the ground that payment was made in full for the articles of jewelry. In addition, debtors have brought a "counterclaim" against plaintiff in which they allege that they delivered two Rolex watches to plaintiff on consignment for resale and allege that plaintiff has refused to return the watches or the proceeds from their sale.

Plaintiff admits to selling one of the watches and to retaining the other watch.

An order will be entered at Adv. No. 91–541–BM directing plaintiff to turn over to the chapter 7 trustee the proceeds realized from the sale of the one watch and to deliver the other watch to the trustee forthwith.

–I–

FACTS

Debtor Thomas Gillingham went to plaintiff's place of business on November 12, 1988, and purchased a Rolex watch for debtors' son for $3,450.00. In payment thereof, he traded in his son's old Rolex watch and paid the balance in cash. During the course of this transaction, debtor exhibited substantial material manifestations of great wealth and little reluctance to purchase highly priced luxury items. As a consequence, plaintiff Gordon set aside normal business prudence in hopes of making large and highly profitable sales. In the course of their discussions, debtor informed plaintiff that he was interested in purchasing a Rolex watch for his wife, debtor JoAnn Gillingham, and selected two (2) watches from a catalogue. Plaintiff then ordered the watches from Rolex Watch USA, Inc.

On November 19, 1988, plaintiff met with *both* debtors in a private room at a local restaurant and showed them the two Rolex watches. Debtor JoAnn Gillingham selected one of the watches but asked that the bracelet from the other watch be attached to her selection. Debtors agreed to a purchase price of $23,500.00. It was further agreed by all parties that debtors would not pay for the watch at that time but would pay the full amount due by the end of December of 1988. They represented to plaintiff that certificates of deposit they owned would mature then and that they would have funds to pay for the watch.

Plaintiff left the restaurant to attach the bracelet Mrs. Gillingham preferred to the watch she had selected. Upon returning to the restaurant shortly thereafter, plaintiff delivered the watch to debtor JoAnn Gillingham. Debtors by then had left the private room and were seated at a table in the main dining room.

Upon his return to the restaurant, plaintiff was asked by debtors if he would take Mrs. Gillingham's old Rolex watch on consignment and attempt to sell it for them. Plaintiff agreed to do so and eventually sold the watch for $7,500.00 in January of 1989. Plaintiff has refused debtors' demands to turn over the net proceeds of the sale of the old watch and still retains same.

Also, debtor Thomas Gillingham indicated at that time that he was interested in purchasing a Rolex watch for himself. Plaintiff then ordered from Rolex Watch USA, Inc. the watch Mr. Gillingham had described to him.

On December 1, 1988, plaintiff met again with both debtors at the same restaurant and showed them the Rolex watch Mr. Gillingham had described. *Both* debtors were pleased with the watch and agreed to a

purchase price of $41,500.00. As was the case with the Rolex watch they previously had purchased for Mrs. Gillingham, debtors did not pay for the watch at the time of its delivery. All parties agreed that debtors would pay the full amount due by the end of December of 1988.

Debtors have not paid for either of the two Rolex watches purchased by them from plaintiff.

Debtors, after taking delivery of the second Rolex watch, asked plaintiff if he also would take Mr. Gillingham's old Rolex watch on consignment and attempt to sell it for them. Plaintiff agreed to do so but has not found a buyer for it. Debtors' demands that the watch be returned have been refused by plaintiff, who still retains the watch.

Debtor Thomas Gillingham contacted plaintiff several days after taking delivery of the second Rolex watch and indicated that he was interested in purchasing a diamond for Mrs. Gillingham. Mr. Gillingham came to plaintiff's place of business subsequent thereto and examined the diamonds in the store. When none of the diamonds was satisfactory, plaintiff described a diamond located at another store which seemed to meet Mr. Gillingham's requirements. Mr. Gillingham instructed plaintiff to procure the diamond and agreed to a purchase price of $35,000.00.

Plaintiff was concerned about the amount due for the two Rolex watches previously purchased by debtor—i.e., $65,-000.00—and indicated that he wished to be paid for either the diamond or for at least one of the watches. Debtor Thomas Gillingham stated that he would pay in full for the diamond when it was delivered to him.

On December 23, 1988, debtors' son came to plaintiff's place of business to pick up the diamond. He had no money with him to pay for the diamond. After consulting with Mr. Gillingham by phone, debtors' son signed a receipt for the diamond. Plaintiff delivered the diamond to debtors' son even though he had not tendered payment for it at that time.

Debtor Thomas Gillingham never paid plaintiff for the diamond.

The diamond was intended as a Christmas present for Mrs. Gillingham. No testimony was offered indicating that she was involved in any of the negotiations leading to this purchase.

On May 18, 1989, after debtors had ignored plaintiff's repeated demands for payment, plaintiff brought a civil action against debtors in the Court of Common Pleas of Allegheny County, Pennsylvania. Default judgment was entered against debtor in the amount of $108,926.03 on June 26, 1989. Debtors filed a petition to open the default judgment on July 21, 1989.

On October 20, 1989, debtors filed a voluntary chapter 11 petition. The petition to reopen the default judgment was pending in state court when their bankruptcy petition was filed. At trial the plaintiff stipulated that the judgment could be opened and that this proceeding could be considered a trial on the merits.

Debtors were in dire need of money and allege that they sold the diamond at issue in this case and fur coats for $100,000.00 in cash to the mother of debtor JoAnn Gillingham. The "sale" occurred subsequent to the bankruptcy filing without notice to any party and without court approval. Debtors offered no information as to the use or whereabouts of the $100,000.00.

On January 9, 1990, plaintiff filed a proof of claim in the amount of $111,518.56.

On January 23, 1990, plaintiff brought Adversary No. 90–029–BM, which is before the court at this time. The original complaint contained a single count alleging breach of contract.

Debtors brought Adversary No. 91–541–BM, which also is before the court at this time, on September 16, 1991. They object to plaintiff's proof of claim on the ground that they had paid in full for all three articles of jewelry and also brought a so-called "counterclaim" seeking a turnover either of the two Rolex watches delivered to plaintiff on consignment or of the proceeds realized from their sale.

Plaintiff was granted leave by the court on December 2, 1991 to amend the com-

plaint at Adversary No. 90–029–BM by adding a count for fraud.

Debtors' chapter 11 proceeding was converted to a chapter 7 proceeding on May 27, 1992. A chapter 7 trustee was appointed shortly thereafter.

Trial of the above adversary actions was conducted on June 24–25, 1992. Plaintiff moved during trial to amend its complaint at Adversary No. 90–029–BM to add another count against debtor JoAnn Gillingham only for quasi-contract/unjust enrichment.

–II–

## ANALYSIS

### A) *Breach Of Contract.*

Count I of the complaint at Adversary No. 90–029–BM asserts a claim against both debtors for breach of contract. Plaintiff maintains that *both* debtors entered into oral contracts with plaintiff to purchase two Rolex watches and the diamond; that *both* debtors agreed to pay $23,500.00 and $41,500.00, respectively, for the two Rolex watches and $35,000.00 for the diamond; and that debtors have not paid for said items. In addition, plaintiff alleges that debtors are liable for $6,000.00 in state sales tax which is due and owing for the jewelry.

■ As the previously-recited facts make clear, *both* debtors—i.e., Thomas Gillingham *and* JoAnn Gillingham—were parties to the agreements to purchase the two Rolex watches. Both were involved in the selection of the watches and both agreed to pay $23,500.00 and $41,500.00, respectively, for them by the end of December of 1988.

■ The record indicates that debtor JoAnn Gillingham was *not*, however, a party to the agreement to purchase the diamond. That agreement was between plaintiff and debtor Thomas Gillingham only. Mr. Gillingham purchased the diamond as a Christmas present for Mrs. Gillingham for $35,000.00 and arranged for debtors' son to take delivery of it on December 23, 1988. Debtor JoAnn Gillingham therefore is *not* liable to plaintiff for breach of contract with respect to the diamond.

Debtors steadfastly maintained at trial that plaintiff had been paid in full for each of the items in question. According to debtors, they paid the purchase price of the two Rolex watches *in cash* when they were delivered. Debtors concede that payment for the diamond was not made on December 23, 1988, when their son took delivery of it, but insist that Mr. Gillingham paid for the diamond *in cash* when he selected it.

■ The credible evidence presented overwhelmingly indicates that debtors did *not* pay for the articles of jewelry *in cash*.

Substantial sums of cash would be required to pay for these items as debtors claim they did. Debtor Thomas Gillingham maintained that he had a "propensity" for paying cash for items he purchased and that he felt "more comfortable" so doing. Mr. Gillingham testified that he would take commission checks earned from his employment to the bank and routinely would deposit only a portion of the check into debtors' bank account and would take out the remainder in cash which then was placed in a safe in debtors' home. According to Mr. Gillingham, as much as $200,000.00 would be in the safe at any given time. When debtors needed money to pay for an item they had purchased, they would take cash from the safe. According to Mr. Gillingham, he took cash from the safe at home and used it to pay in full for each of the articles of jewelry purchased from plaintiff.

Debtors' contention that they *routinely* paid in cash for large purchases is not believable for several reasons.

Mr. Gillingham is self-employed as an "asset manager" who is involved in advising individuals of considerable means as to how to manage their wealth. He charges a minimum of $5,000.00 for his services. It is wildly implausible that an individual with so sophisticated an understanding of financial matters would leave as much as $200,000.00 sitting idly in a safe at home where it would not generate additional income. In order to believe debtors' story, one would have to believe that debtors engaged

in a practice which Mr. Gillingham surely advised his clients against.

Were the contention that Mr. Gillingham routinely negotiated all or a substantial portion of his commission checks for cash true, one would expect debtors' bank records to bear this out. Debtors did not, however, produce credible bank records to support their contention. To the contrary, they repeatedly frustrated plaintiff's efforts during discovery to acquire those records.

Also, debtors' claim that they had a "propensity" for paying cash for substantial purchases is refuted by what is known about their purchasing habits. Debtors did not pay cash for other items costing as much or even less than the articles of jewelry at issue. For instance, debtors purchased several fur coats in October of 1990 from Grosvenor, Inc. in Montreal, Canada. Mr. Gillingham wrote a check in the amount of $25,814.00 on November 7, 1990 to pay for the coats. Debtors also purchased a new Honda Accord automobile for their son in 1988. They paid for the automobile by check, not in cash.

Finally, it strains at credulity to insist, as debtors do, that Mr. Gillingham paid in cash for the diamond he purchased from plaintiff. Debtors do not dispute that their son did not tender payment when he took delivery of the diamond on December 23, 1988. They instead insist that Mr. Gillingham paid $35,000.00 in cash when he *ordered* the diamond. As has been noted, the diamond was not at debtor's place of business when he selected it. Mr. Gillingham had not yet seen the diamond. It is ludicrous to claim that Mr. Gillingham, a sophisticated businessman, would have paid the considerable sum of $35,000.00 in cash for a diamond he had not yet seen, especially when he was not satisfied with the diamonds plaintiff had shown him.

B) *Fraud.*

It has been determined that debtor Thomas Gillingham is liable to plaintiff for breach of contract with respect to the two Rolex watches and the diamond. Debtor JoAnn Gillingham, however, is liable for breach of contract only with respect to the two watches. She is *not* liable under that theory for the diamond. Accordingly, it remains to be determined whether she is liable for fraud with respect to the diamond, as is alleged in Count II of the amended complaint at Adversary No. 90–029–BM.

Fraud generally consists of anything calculated to deceive, whether by single act or combination, or by suppression of the truth, or by a suggestion of what is false, whether it be by direct falsehood or by innuendo, or by look or gesture. *See In re Reichert's Estate,* 356 Pa. 269, 274, 51 A.2d 615, 617 (1947). One who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or to refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by justifiably relying thereon. *See Savitz v. Weinstein,* 395 Pa. 173, 177, 149 A.2d 110, 113 (1959).

The essential elements of fraud are:

(1) a false representation of an existing fact;

(2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction at issue; if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is *not* a requisite to the action;

(3) *scienter,* which may be either actual knowledge of the falsity of the misrepresentation, reckless ignorance of its falsity, or mere false information where a duty to know is imposed by reason of special circumstances;

(4) reliance, which must be justifiable so that common prudence or diligence could not have ascertained the truth; and

(5) damage to the person relying thereon.

*Shane v. Hoffman,* 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974) (citations omitted).

The party alleging fraud has the burden of proving each of these essential

elements by clear and convincing evidence, rather than by a mere preponderance of the evidence. *See Beardshall v. Minuteman Press International, Inc.,* 664 F.2d 23, 26 (3d Cir.1981) (*citing Snell v. Pennsylvania,* 490 Pa. 277, 281, 416 A.2d 468, 470 (1980)). The requirements of this higher standard of proof were addressed as follows in *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 72, 97 A.2d 71, 74 (1953) (*quoting Stafford v. Reed,* 363 Pa. 405, 407, 410–11, 70 A.2d 345, 346 (1950)):

> It means that the witnesses must be "credible, ... distinctly remember the facts to which they testify, and narrate the details exactly" ...; that the evidence "is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt" ...; that "the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitation, of the truth of the precise facts in issue".

■ The claim against debtor JoAnn Gillingham set forth in Count II with respect to the diamond fails for much the same reason as Count I did. As was noted, there was no credible evidence that Mrs. Gillingham was involved in any way in the negotiations leading to the purchasing of the diamond. All negotiations took place between plaintiff and Mr. Gillingham. Mrs. Gillingham made no representations whatever, false or otherwise, to plaintiff concerning the diamond. There can be no fraud because the first essential element of fraud indicated previously is lacking.

## C) *Quasi–Contract/Unjust Enrichment.*

Plaintiff orally moved at trial to amend its complaint to add a count against debtor JoAnn Gillingham based on the theory of quasi-contract/unjust enrichment.

■ A quasi-contract is a fictional contract implied in law whereby a duty is imposed upon a person by law and in spite of any contrary intention they might have had. It is not imposed because of any express or implied promise on their part to perform. *See DeGasperi v. Valicenti,* 198 Pa.Super. 455, 457, 181 A.2d 862, 863 (1962).

■ A quasi-contract may be imposed to promote justice and to prevent unjust enrichment. *See Schenley Distillers Corp. v. Kinsey Distilling Corp.,* 136 F.2d 350, 352 (3d Cir.1943). One who has been unjustly enriched at the expense of another will be required to make restitution to the other party. *See Harkins v. Zamichieli,* 266 Pa.Super. 401, 407, 405 A.2d 495, 499 (1979). There must be (1) an enrichment and (2) an injustice resulting if recovery for enrichment is denied. *Id.* (*citing Belmont Industries v. Bechtel Corp.,* 425 F.Supp. 524, 526 n. 3 (E.D.Pa.1976)).

■ Plaintiff's quasi-contract claim against debtor JoAnn Gillingham with respect to the diamond must fail for several reasons.

■ In order for plaintiff to prevail on this theory, it must show that Mrs. Gillingham either wrongfully secured or passively received a benefit that would be unconscionable for her to retain without compensating plaintiff. *See Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987) (*citing Torchia on Behalf of Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581 (1985)).

There is nothing to indicate that Mrs. Gillingham "wrongfully secured" any benefit from plaintiff with regard to the diamond. This particular transaction took place between plaintiff and debtor Thomas Gillingham. Mrs. Gillingham was not involved. The benefit she received was wrongfully secured by Mr. Gillingham.

Although Mrs. Gillingham unquestionably was the passive recipient of a benefit in that the diamond was given to her by her husband as a Christmas present, it would *not* be unconscionable for her to retain it without compensating plaintiff. The evidence presented is not compelling enough to justify a determination that the recipient of a surprise present which was not paid

for by the purchaser must make restitution to the seller of the present.

 A quasi-contract will be imposed whenever necessary to account for some *relation* found to exist between the parties where no contract in fact exists. *See Thomas v. R.J. Reynolds Tobacco Co.*, 350 Pa. 262, 266, 38 A.2d 61, 63 (1944). No relation existed between plaintiff and debtor JoAnn Gillingham regarding the diamond. They were "total strangers" in that regard. The fact that a relation existed between them with respect to the Rolex watches is irrelevant.

### D) *Damages.*

The damages to be awarded to plaintiff as a result of debtors' breaches of the above contracts must to be determined.

Plaintiff seeks to recover a total of $106,-000.00 in damages. He seeks to recover the total contract price of the three articles of jewelry—i.e., $100,000.00—plus $6,000.00 in state sales tax which debtors allegedly owe.

 As a general matter, the measure of damages applicable to a breach of contract is that the aggrieved party shall be placed as nearly as possible in the same position as he would have occupied had there been no breach. *See Harman v. Chambers*, 358 Pa. 516, 521, 57 A.2d 842, 845 (1948). The measure of damages for breach of contract to pay a fixed sum is the sum stated. *See Pantano v. Zamer Motor Sales Co.*, 170 Pa.Super. 317, 322, 85 A.2d 681, 684 (1952). The aggrieved party may recover such damages as would naturally and ordinarily flow from the breach or as were reasonably foreseeable and within the contemplation of the parties when they made the contract. *See Taylor v. Kaufhold*, 368 Pa. 538, 546, 84 A.2d 347, 351 (1951).

 The contract prices of the two Rolex watches were $23,500.00 and $41,-500.00, respectively. The contract price of the diamond was $35,000.00.

Debtor Thomas Gillingham was in breach of all three contracts. As a consequence, plaintiff is entitled to recover $100,000.00 in damages from him ($23,500.00 + $41,-500.00 + $35,000.00 = $100,000.00).

Debtor JoAnn Gillingham was in breach of the contracts pertaining to the two Rolex watches. She was not a party to the contract pertaining to the diamond. Accordingly, plaintiff is entitled to recover $65,000.00 in damages from her ($23,500.00 + $41,500.00 = $65,000.00).

 Plaintiff's request that he also be awarded an additional $6,000.00 for state sales tax due on the jewelry must be denied. When asked about the sales tax at trial by his counsel, plaintiff responded only that the Department of Revenue of Pennsylvania had audited his tax records and had found that everything was in order. Plaintiff did not establish by clear, credible testimony that he had in fact paid the sales tax himself. If this were in fact the case, some written document would have been offered.

Judgment will be entered in favor of plaintiff and against debtor Thomas Gillingham in the amount of $100,000.00 and against debtor JoAnn Gillingham in the amount of $65,000.00.

### E) *Debtors' "Counterclaim".*

 When they purchased the two Rolex watches from plaintiff debtors gave him their old Rolex watches and asked him to sell them. Plaintiff eventually sold one of the watches in January of 1989 for $7,500.00 and refused to turn the proceeds over to debtors. Plaintiff has been unable to sell the other Rolex watch and has retained possession of it.

It is beyond peradventure that the unsold watch and the proceeds from the sale of the other watch are property of the estate pursuant to 11 U.S.C. § 541(a) and that the chapter 7 trustee could use or sell them pursuant to 11 U.S.C. § 363. Accordingly, plaintiff will be directed pursuant to 11 U.S.C. § 542(a) to deliver forthwith the unsold Rolex watch and the proceeds from the sale of the other Rolex watch to the chapter 7 trustee.

Appropriate orders shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 24th day of July, 1992, in accordance with the accompanying Memorandum Opinion, it is

64

hereby ORDERED, ADJUDGED and DE-
CREED that judgment is entered in favor
of plaintiff Gordon Investment, Inc., d/b/a
Orr's Jewelers, and against debtor Thomas
Gillingham in the amount of $100,000.00.

IT IS FURTHER ORDERED that judg-
ment is entered in favor of plaintiff Gordon
Investments, Inc., d/b/a Orr's Jewelers
and against debtor JoAnn Willcox Gilling-
ham in the amount of $65,000.00.

## ORDER OF COURT

AND NOW at Pittsburgh this 24th day
of July, 1992, in accordance with the ac-
companying Memorandum Opinion, it is
hereby ORDERED, ADJUDGED and DE-
CREED that debtors' objection to Proof of
Claim No. 3 filed by Gordon Investments,
Inc., d/b/a Orr's Jewelers, is OVER-
RULED.

IT IS FURTHER ORDERED that defen-
dant Gordon Investments, Inc., d/b/a Orr's
Jewelers, immediately turn over to the
chapter 7 trustee the Rolex watch given to
it on consignment by debtors which it has
not sold and the proceeds realized from the
sale of the other Rolex watch given to it on
consignment.