**In re Thomas GILLINGHAM and Joann Gillingham, Debtors.**

**GORDON INVESTMENTS, INC., d/b/a Orr's Jewelers, Appellant,**

**v.**

**Thomas GILLINGHAM and Joann Gillingham, Appellees.**

Civ. A. No. 92–2222.

United States District Court, W.D. Pennsylvania.

Feb. 26, 1993.

Dennis J. Kusturiss, Pittsburgh, PA, for appellant.

Dennis J. Spyra, Pittsburgh, PA, for appellees.

Stephen I. Goldring, U.S. Bankruptcy Trustee, Pittsburgh, PA.

Carlota M. Bohm, Trustee, Pittsburgh, PA.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is an appeal from a bankruptcy order filed by appellant, Gordon Investments, Inc., doing business as Orr's Jewelers (Gordon).

The instant appeal stems from a series of sales that occurred between Gordon and debtors Thomas and Joann Gillingham. On November 19, 1988, debtors purchased from Gordon a woman's Rolex watch for $23,500. Later in the day, debtors gave Gordon Joann Gillingham's old Rolex watch for Gordon to sell on consignment. Gordon eventually did so, for a selling price of $7,500. On December 1, 1988, debtor Thomas Gillingham purchased a Rolex watch for himself for a purchase price of $41,500. Again, debtors requested that Gordon accept Thomas Gillingham's watch to be sold on consignment, which Gordon did, but has been unable to sell that watch.

Debtors made no payments towards either of the new watches, instead agreeing with Gordon to pay the full amount due by the end of December, 1988.

On December 23, 1988, debtors' son picked up from Gordon a diamond which Thomas Gillingham had ordered, valued at $35,000. Gordon delivered the diamond to debtors' son.

No payments were ever made on either of the two watches or the diamond. On May 18, 1989, after repeated requests for payment, Gordon instituted a civil action against debtors in the Court of Common Pleas of Allegheny County. On June 26, 1989, default judgment was entered against debtors in the amount of $108,-926.03. Debtors filed a petition to open the default judgment on July 21, 1989.

On October 20, 1989, debtors filed a voluntary Chapter 11 petition. On May 27, 1992, debtors' Chapter 11 proceeding was converted to a Chapter 7 proceeding. By agreement of the parties, the state court default judgment was opened and an adversarial action was brought in bankruptcy court. A trial was held before Bankruptcy Judge Bernard Markovitz on June 24–25, 1992. By memorandum opinion and order

dated July 24, 1992, 143 B.R. 55, Judge Markovitz found that debtors breached their contract with Gordon and, therefore, judgment was entered against debtor Thomas Gillingham in the amount of $100,000 and judgment was entered against debtor Joann Gillingham in the amount of $65,000. Further, Judge Markovitz ordered that the unsold consigned watch and the proceeds from the sale of the other watch be delivered to the Chapter 7 trustee as property of the estate.

Gordon filed a motion to amend judgment and make additional findings on August 3, 1992, asserting that the consigned watches were collateral for the new watch purchases and Gordon was, therefore, entitled to setoff their value from the debt owed by the Gillinghams. By order dated September 15, 1992, Judge Markovitz denied Gordon's motion and the instant appeal followed.

Gordon asserts the following as its issues on appeal: (1) the debts between Gordon and the debtors were mutual and the disclosure statement and plan filed by debtors in Chapter 11, which were approved and confirmed, recognized that Gordon had a security interest in the consignment watches; therefore, Gordon is entitled to a setoff and should not be required to return the consignment watch and the proceeds from the sale of the other; and (2) the bankruptcy court exceeded its authority when it declared that "[t]he disclosure statement and plan do not provide that a determination that debtors had not paid for the watches and jewelry meant that Gordon was secured."

This Court will apply a clearly erroneous standard to the findings of fact and will conduct plenary review of the legal conclusions. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1223 (3d Cir.1989). The bankruptcy court's determination that Gordon is not entitled to a setoff is reviewed for abuse of discretion. 11 U.S.C. § 553; *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir.1979).

*I. The plan of reorganization*

In the revised modified first amended plan of reorganization, ultimately confirmed by Bankruptcy Judge Cosetti on November 12, 1991, Gordon's claim was addressed as follows:

*Unimpaired claims—Class 3: disputed secured claim*

The claim of Class 3 creditor [Gordon], relates to a disputed judgment and levy entered in the Court of Common Pleas of Allegheny County. The validity of [Gordon's] claim will be finally resolved in the pending state court action. Should the state court action be finally resolved in [Gordon's] favor, it will be left as a fully secured creditor and paid in full, first from the proceeds from the sale of the collateral (two Rolex watches in the Gillinghams' possession and two in [Gordon's] possession) with any resulting deficiency being paid in case on or before thirty (30) days after the termination of such deficiency after the sale of the watches.

(Record document No. 118, pp. 3–4).

Gordon asserts that 11 U.S.C. § 1141 mandates that this provision has a *res judicata* effect and, therefore, Gordon has a security interest in the consignment watch and the proceeds from the sale of the other.

Section 1141 provides that:

The provisions of a confirmed plan bind the debtor, any entity in issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

"The effect of confirmation under the plain language of § 1141(a) is to bind all parties to the terms of a plan of reorganization." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991). "Confirmation of a plan of reorganization by the bankruptcy court has an

effect of judgment by the district court and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.... Without this rule there would be no finality to confirmed plans." *Id.* at 463. *See also United States on behalf of IRS v. Norton,* 717 F.2d 767, 774 (3d Cir.1983) (Applying 11 U.S.C. § 1327, the analogous section for Chapter 13 bankruptcy proceedings, the Court held that the finality provision takes precedence over other provisions, such as the setoff provision of 11 U.S.C. § 553.).

■■■■ This Court will not disturb this well settled rule of law: once a bankruptcy plan is confirmed, the parties are bound by its resolution of the issues presented in it. However, the section of the confirmed plan at issue in this case did not *resolve* the issue of Gordon's claim. Instead, the plan provided that "the validity of [Gordon's] claim will be finally resolved in the pending state court action." Procedurally, the state court never did resolve the "validity of [Gordon's] claim," instead, the state court case was ultimately tried before the bankruptcy court as an adversary proceeding. The bankruptcy court's "resolution" of the case included a finding that debtors did not make any payments towards the watches and were, therefore, liable to Gordon for the price of the watches. Additionally, the court made the factual finding that, subsequent to the purchase of the two watches:

> [Gordon] was asked by debtors if he would take Mrs. Gillingham's old Rolex watch on consignment and attempt to sell it for them. [Gordon] agreed to do so....
>
> Debtors, after taking delivery of the second Rolex watch, asked [Gordon] if he also would take Mr. Gillingham's old Rolex watch on consignment and attempt to sell it for them. [Gordon] agreed to do so....

(Memorandum opinion (7/24/92) at pp. 4–5).

These findings of fact substantiate Bankruptcy Judge Markovitz' denial of Gordon's motion to amend judgment based upon the fact that, "There is no evidence that any debt owed by Gordon to debtors which arises out of the consignment was a 'mutual' debt. To the contrary, consignment of the two watches was in the nature of an afterthought and was not related to the debt owed by debtors to Gordon for the purchase of the new Rolex watches." (Order of court (9/15/92) at p. 4).

These findings, just outlined, represent the "final resolution" of Gordon's claims as contemplated in the confirmed reorganization plan. As such, these findings did not serve to effectuate the provision of the plan of reorganization which provided that "[s]hould the state court action be finally resolved in [Gordon's] favor, it will be left as a fully secured creditor and paid in full...." In fact, the state court action (as ultimately an adversarial action in bankruptcy court) was not "finally resolved in [Gordon's] favor," in that the two watches were found not to serve as a component of a mutual debt, but, rather, were found to be an "afterthought" unrelated to the purchase of the new watches.

This Court can find nothing in the record that shows that these findings of fact are clearly erroneous, and, therefore, they will be affirmed.

## II. Gordon's right to a setoff

■■■ This Court will also affirm Bankruptcy Judge Markovitz' decision to deny Gordon the right to a setoff. Judge Markovitz' decision was not an abuse of discretion, was not clearly erroneous and was consistent with the law.

"To be mutual [and, therefore, entitled to setoff,] the debts must be in the same right and between the same parties, standing in the same capacity." *Matter of Bevill, Bresler & Schulman Asset Management,* 896 F.2d 54, 59 (3d Cir.1990). Bankruptcy Judge Markovitz stated, "Said watches were given to Gordon on consignment as an afterthought, which consignment was *unrelated* to the debt due and owing for the new Rolex watches." (Order of court (9/15/92) at p. 4).

In *Bevill, supra,* the Third Circuit distinguished between property which is held in trust and property whose ownership is actually transferred. The former, the *Bevill* Court held, would not entitle the creditor to a setoff. The latter, provided that the debts were mutual, would.

In *Bevill, supra,* debtor had entered into a repurchase agreement with creditor. This agreement provided that debtor would sell certain treasury bonds to creditor for less than face value. Debtor, simultaneously with the selling, agreed to repurchase these bonds at a later date for a certain amount, more than face value. The Third Circuit concluded that the creditor in *Bevill* "owed a debt to [the debtor] to the extent that it failed to deliver the treasury bonds, or their equivalent, as required by contract." *Bevill,* 896 F.2d at 59.

In a separate transaction, debtor agreed by contract to deliver certain securities to a safekeeping account in return for cash payment and to repurchase these securities for cash at a later date. The Court found that the debtor "breached the first of these contracts when it failed to deliver the [securities] to safekeeping. [Creditor] thus had a valid pre-petition claim based on breach of contract." *Id.* at 59.

The Court found that these were mutual debts and entitled to a setoff.

[E]ach party here contracted with the other, each breached a contractual obligation to the other and owes the other as a result. Even the breaches are similar—both [debtor] and [creditor] failed to deliver securities to the other, or to safekeeping for the other's benefit, as required by contract. Given the symmetry of obligation between [debtor] and [creditor], we conclude that the debt and claim here are mutual and thus properly subject to setoff under § 553.

*Id.* at 59.

What is notable about the *Bevill* case is how the Court treated a third transaction, wherein debtor sold certain Government National Mortgage Association (GNMA) pools, which included maturing coupons, to creditor with a simultaneous agreement by debtor to repurchase them at a later date. The agreement specifically provided that the "maturing coupons are to be the property of [debtor]." *Bevill,* 896 F.2d at 56. Creditor attempted to characterize their failure to remit these coupons to debtor as a debt owed by creditor to debtor and subject to setoff. The Third Circuit disagreed.

The setoff section applies only to those situations where the bankrupt and the creditor owe a debt to one another. It does not include the situation where the bankrupt's property is in the possession of the creditor as bailee or trustee, without color of lien. The logic of the rule is that the trust res is not owing to the bankrupt's estate, but rather is owned by it.

*Bevill,* 896 F.2d at 57 (*quoting In re Lykens Hosiery Mills, Inc.,* 141 F.Supp. 891, 893–94 (S.D.N.Y.1956)). The *Bevill* Court found that creditor "had no right to retain these payments under contract." *Id.* at 58. *Cf. Mizan Arabians v. Pyramid,* 821 F.2d 357, 360 (6th Cir.1987) (The Court allowed setoff of commission fees from the bid price of horses sold on consignment based upon the agreement that seller would pay a 12 percent commission on the consigned sale.).

The consigned watches in the instant case are similar to the GNMA coupons, and not the bonds. The Pennsylvania Supreme Court defined consignment as a situation where "title remains in the principal, but the possession passes to the factor, and the factor is liable, not to pay a price, but to account for the proceeds of the goods when sold." *Tax Review Board of Philadelphia v. Elster & Prager,* 178 A.2d 611, 612 (Pa. 1962). Under this law, and applying the facts as set forth by Judge Markovitz and affirmed by this Court, the watches in the possession of Gordon were held on consignment, and were not related to the sale of the watches for which Gordon was a creditor. Therefore, Judge Markovitz' conclusion that Gordon is not entitled to a setoff will be affirmed. *See Bevill,* 896 F.2d at 57 ("The [setoff] provision is permissive rather than mandatory, and cannot be invoked in a case where the general principles of setoff would not justify it.").

It is worth noting, finally, that Gordon's troubles in the instant case could have been circumvented had it insisted on the proper recordkeeping and business practices. In his memorandum opinion, Judge Markovitz stated that "[d]uring the course of [an earlier] transaction, debtor exhibited substantial material manifestations of great wealth and little reluctance to purchase highly

priced luxury items." (Memorandum opinion at p. 3). Judge Markovitz insightfully pointed out that, "[a]s a consequence, plaintiff Gordon set aside normal business prudence in hopes of making large and highly profitable sales." *Id.* Had "normal business prudence" been followed by Gordon, Gordon may have been able to garner the used watches as security for the sale and, then, in fact, been allowed a setoff. There is no doubt, however, that this never occurred.

An appropriate Order will be issued.

### ORDER

AND NOW, this 26th day of February, 1993, upon consideration of Gordon Investments, Inc., d/b/a Orr's Jewelers' Appeal from the Bankruptcy Court's Orders entered July 24 and September 15, 1992, and for the reasons set forth in this Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that said Appeal is DENIED and the Orders entered by Bankruptcy Judge Markovitz on July 24 and September 15, 1992, are hereby AFFIRMED.