## In re WOODWARD & LOTHROP HOLDINGS, INC., et al., Debtors.

### Bankruptcy No. 94 B 40222 (SMB).

United States Bankruptcy Court, S.D. New York.

Feb. 11, 1997.

368

Willkie Farr & Gallagher (Marc Abrams, Douglas Rappaport, of counsel), New York City, for Debtors.

Greenfield & Rifkin L.L.P. (Richard D. Greenfield, Ann M. Caldwell, Seth I. Grossman, of counsel), Ardmore, PA, Phyllis K. Sager, Bryn Mawr, PA, for Claimant M.H. Sager.

## MEMORANDUM DECISION GRANTING DEBTORS' MOTION TO EXPUNGE CLASS PROOF OF CLAIM

STUART M. BERNSTEIN, Bankruptcy Judge.

The pending matter concerns the suitability of class proofs of claim. The debtors have moved to expunge the proof of claim filed by M.H. Sager, individually and as representative of a class that includes all persons who purchased mattresses and boxsprings ("bedding") from the debtors[1] since November 3, 1987. Sager has cross-moved, seeking to compel the submission of his claim to the Court-ordered Alternate Dispute Resolution ("ADR") program established in this case. Alternatively, Sager requests relief from the automatic stay to continue his prepetition litigation in federal district court. For the reasons that follow, the Court will expunge the class proof of claim, refer Sager's individual claim to the ADR program and deny the balance of the cross-motion.

## FACTS

Shortly before the commencement of these chapter 11 cases, Sager filed a class action in Pennsylvania state court against Woodward & Lothrop Incorporated, a retail department store chain. The debtor removed the action to the United States District Court for the Eastern District of Pennsylvania prior to the bankruptcy, and the matter is still pending there, subject to the automatic stay.

The complaint alleges, in substance, that the debtor, acting in concert with other licensors, manufacturers and sellers of bedding, made false and misleading statements in connection with the price that it charged for bedding sold in its stores. Specifically, the debtor advertised that it sold the bedding at prices substantially below the "regular," "original" or "suggested retail" prices. The discount, however, was illusory and misleading because the debtor inflated the "regular," "original" and "suggested retail" prices that it quoted for purposes of comparison. (Complaint ¶¶ 8–10.) This practice misled consumers, (id. at ¶ 11), who were unaware of the deception, (id. at ¶ 13), and purchased bedding in reliance on these misrepresentations. (Id. at ¶ 17.)[2]

The complaint asserts causes of action under Pennsylvania's consumer protection law, common law fraud, negligent misrepresentation and unjust enrichment. It also contains the class action allegations required under Rules 1702 and 1708(a)(1) of the Pennsylvania Rules of Civil Procedure. These include numerosity, commonality, typicality and adequate representation, (Complaint ¶¶ 4(a), 4(b), 5, 6), that the class action is a fair and efficient method for adjudicating the contro-

1. The only defendant named by Sager in the complaint is Woodward & Lothrop Incorporated. Despite this, the complaint also alleges wrongdoing by John Wanamaker, Philadelphia, an affiliated debtor. Since the two debtors were substantively consolidated in connection with the confirmation of their joint liquidating plan, the distinction is immaterial, and this decision refers simply to the debtor.

2. Sager purchased bedding for $992.15 on December 21, 1992. (Complaint ¶ 18.)

versy, (*id.* at ¶ 7), and that common questions of law and fact predominate over questions affecting only individual members. (*Id.* ¶ 4(b).) The predominant, common questions include misrepresentation, (*id.* at ¶ 4(b)(i)), materiality, (*id.* at ¶ 4(b)(ii)), reliance (*id.* at ¶ 4(b)(iii)) and damages. (*Id.* at ¶ 4(b)(iv).) These same allegations satisfy the pleading requirements imposed under Fed.R.Civ.P. 23(a) [3] and 23(b)(3).[4]

On or about August 29, 1994, Sager filed a timely class proof of claim in an unliquidated amount, attaching his complaint to the claim. No court has ever certified Sager's class, nor has Sager ever moved for class certification.

### DISCUSSION

 Subject to some lingering debate, the majority of courts permit class proofs of claim. 10 Lawrence P. King, *et al., Collier on Bankruptcy* ¶ 7023.01, at 7023–3–4 (15th ed. rev. 1996) ("*Collier*"). This district follows the majority rule. *See, e.g., In re Thomson McKinnon Securities, Inc.,* 141 B.R. 31, 32 (S.D.N.Y.1992); *In re Chateaugay Corp.,* 104 B.R. 626, 634 (S.D.N.Y.1989), *appeal dismissed,* 930 F.2d 245 (2d Cir.1991). The right to proceed as a class claim, however, is not automatic. Rule 23 of the Federal Rules of Civil Procedure sets out the requirements for class actions in federal courts. Rule 7023 of the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rule") makes Rule 23 applicable to adversary proceedings. Federal Bankruptcy· Rule 9014, which governs contested matters, expressly incorporates many of the individual rules comprising Part VII of the Federal Bankruptcy Rules, but omits Rule 7023. Nevertheless, the bankruptcy court may direct the application of any other rule in Part VII at "any stage in a particular matter." For a class action claim to proceed, (1) the bankruptcy court must direct Rule 23 to apply, *see In re Bicoastal Corp.,* 133 B.R. 252, 255 (Bankr.M.D.Fla.1991) (Federal Bankruptcy Rule 7023 will not be applicable unless a timely motion to make it applicable is filed), (2) the claim must satisfy the requirements of Rule 23, *In re Mortgage & Realty Trust,* 125 B.R. 575, 580 (Bankr.C.D.Cal.1991), and (3) the benefits that generally support class certification in civil litigation must be realizable in the bankruptcy case. *Id.*

### A. The Applicability of Part VII

 The initial decision to apply Rule 23 in a contested matter raises a "chicken and egg" paradox. The claim cannot be allowed as a class claim until the bankruptcy court directs that Rule 23 apply. It can only make this direction in a pending contested matter which the mere filing of the claim does not initiate.[5] In the absence of an objection,

---

3. Fed.R.Civ.P. 23(a) provides as follows:

 One or more members of a class may sue or be sued as representative parties on behalf of all only if
 (1) the class is so numerous that joinder of all members is impracticable,
 (2) there are questions of law or fact common to the class,
 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
 (4) the representative parties will fairly and adequately protect the interests of the class.

4. Fed.R.Civ.P. 23(b)(3) provides as follows:

 (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 . . . .
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
 (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
 (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
 (D) the difficulties likely to be encountered in the management of a class action.

5. In *In re American Reserve Corp.,* 840 F.2d 487, 488 (7th Cir.1988), the court stated that the filing of the proof of claim is a "stage" of a contested matter, and without more, permits a court to direct that Rule 23 apply. *Accord In re Chateaugay Corp.,* 104 B.R. at 634 ("seriously" questioning the contrary position). *Collier* calls this a "debatable premise." 10 *Collier* ¶ 7023.01, at 7023–4. A contested matter, like an adversary proceeding, involves a dispute between at least two parties in which one party opposes the relief

however, the proof of claim is deemed allowed. *In re Chateaugay Corp.*, 104 B.R. at 634; 3 James F. Queenan, Jr., *et al., Chapter 11 Theory & Practice: A Guide to Reorganization* § 21.42, at 21:125 (1994).

■ The answer to the paradox lies in Rule 23 itself. Under Rule 23(c)(1), the court must determine expeditiously whether the matter may proceed as a class action.[6] Prompt certification is particularly important where, as here, the class representative relies on Rule 23(b)(3). Rule 23(c)(2)[7] mandates specific notification to the (b)(3) class which must, *inter alia*, advise each class member of the right to opt out. 10 *Collier* ¶ 7023.04[2], at 7023–17. Rule 23 does not say who must make a timely motion, but the duty ordinarily falls on the proponent of the class action. *Sanders v. Faraday Lab., Inc.*, 82 F.R.D. 99, 102 (E.D.N.Y.1979); 3B James Wm. Moore, *et al., Moore's Federal Practice* ¶ 23.50, at 23–391–92 (2d ed. 1996) ("*Moore's* "). While the debtor can also raise the issue through an objection, or the court can do so on its own motion,[8] *see* 3B *Moore's* ¶ 23.50, at 23–392–93, the class representative's failure to move for class certification is a strong indication that he will not fairly and adequately represent the interests of the class. *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404–05, 97 S.Ct. 1891, 1897–98, 52 L.Ed.2d 453 (1977); *see Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y.1981).

■ As a rule, the mere failure to seek certification does not mandate denial in the absence of compelling circumstances. *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. at 101; *Sanders v. Faraday Lab., Inc.*, 82 F.R.D. at 102. In bankruptcy, however, the delay may impact on the entire case—not just the affected claim—and provides grounds to refuse to make Rule 23 applicable to the claims process.[9] *See In re Thomson McKinnon Secs., Inc.*, 150 B.R. 98, 101 (Bankr.S.D.N.Y.1992). As the case moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate. If the claimant waits until a post confirmation claim objection to first bring the issue to a head, serious prejudice may result to the other creditors and the estate.

■ The pending matter illustrates this consequence. Sager filed his class claim in August 1994, but to date, has still not moved to certify the class. Rather, he raised the issue only indirectly and defensively in response to the debtor's post confirmation objection to his claim. In the interim, the debtor sold all of its assets, confirmed a liquidating plan, and made an approximate 70% distribution to unsecured creditors. If the debtor must now spend the time and money litigating the class certification questions and paying a class claim, this may jeopardize further distributions, and eventually, require disgorgement. Sager's inaction

---

sought by another. *Id.* at ¶ 9014.01, at 9014–2. Proofs of claim are valid unless affirmatively opposed by separate objection, and hence the objection—and not the filing of the claim—initiates the contested matter.

6. Fed.R.Civ.P. 23(c)(1) provides as follows:

As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

7. Fed.R.Civ.P. 23(c)(2) provides as follows:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that

(A) the court will exclude the member from the class if the member so requests by a specified date;

(B) the judgment, whether favorable or not, will include all members who do not request exclusion; and

(C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

8. Unlike civil litigation, it appears that a bankruptcy court can only raise certification in connection with a contested matter.

9. This concern overlaps with those discussed in part C, *infra*, and specifically, whether the unique aspects of bankruptcy counsel against certifying a class that otherwise meets the requirements of Rule 23.

to this point weighs strongly against now allowing him to utilize the class claim device.

Sager acknowledges the delay, but blames it on the debtor and its acquiescence in his participation in the Court-ordered ADR program. Early in the case, the Court established an ADR program primarily to liquidate personal injury claims that the bankruptcy court cannot liquidate. *See* 28 U.S.C. § 157(b)(5) (1994). However, the program also encompassed certain commercial disputes, and covered the type of claims asserted by Sager. He participated in the program until the debtor objected to his claim, and he implies that he was somehow lulled into believing that he would liquidate the claim through the program.

This participation, however, never relieved him of the duty to certify the class expeditiously. Had he done so, he would have discovered that his class, as proposed, was ineligible for ADR. According to its terms, the ADR program was limited to claims that arose on or after June 1, 1988. *See* Debtor's Alternate Dispute Resolution Program § 1.01.07. Sager's class, however, includes persons whose claims arose up to seven months before the cutoff date, and who are not, therefore, eligible to participate in the ADR program. Sager never sought to amend his claim to modify his class, and the class that he seeks to represent is ineligible for the ADR. For all of the foregoing reasons, it would be an abuse of discretion to permit Sager to first invoke the applicability of the class action rules to his claim at this late date.

## B. The Standards of Rule 23

 Assuming Rule 23 applied to Sager's claim, the claim does not satisfy the Rule. As noted, Rule 23 of the Federal Rules of Civil Procedure sets the standards for class actions in federal court. Under Rule 23(a), these include numerosity, commonality, typicality and adequate representation. The class plaintiff must also satisfy one of the subdivisions of Rule 23(b). Although the

complaint was filed under Pennsylvania state law, the class allegations track the requirements of Rule 23(b)(3), asserting the predominance of common questions of law and fact, (Complaint ¶ 4(b)), and the superiority, fairness and efficiency of a class action adjudication. (*Id.* at ¶ 7.) Further, assuming that Sager satisfies the requirements of Rule 23(a), he nonetheless fails to meet the "predominant common question" test imposed under Rule 23(b)(3).[10]

 The gravamen of Sager's claim is fraud. He alleges that the debtor used false advertising to induce the class members to purchase bedding, luring them with false representations that the debtor charged discount or nonretail prices. A class action is generally not appropriate to resolve claims based upon common law fraud because each class member must prove his or her own reliance. *Klemow v. Time Inc.*, 466 Pa. 189, 352 A.2d 12, 16 n. 17, *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). This is especially true when the claim is based on false advertising. *See, e.g., Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 215 (N.D.Cal.1994) (refusing to certify class of all persons who purchased "Miracle–Ear" hearing aids advertised to reduce background noise and improve hearing); *Rosenstein v. CPC Int'l, Inc.*, Civ. A. No. 90–4970, 1991 WL 1783, at *2 (E.D.Pa. Jan. 8, 1991) (refusing to certify a class of consumers who claimed that Mazola falsely advertised the low serum cholesterol benefits of its corn oil and margarine); *Casper v. Cunard Line, Ltd.*, 560 F.Supp. 240, 243 (E.D.Pa.1983) (refusing to certify class of cruise passengers claiming that the defendant falsely advertised its itinerary); *Wilensky v. Olympic Airways, S.A.*, 73 F.R.D. 473, 479 (E.D.Pa.1977) (refusing to certify class of airline passengers claiming that defendant's promotional literature intentionally concealed its practice of overbooking); *Edelman v. Lee Optical Co.*, 24 Ill. App.3d 216, 320 N.E.2d 517, 519 (1974) (refusing to certify class of purchasers of single vision lenses and eyeglass frames claiming

---

**10.** The commonality required under Rule 23(a)(2) "is significantly less rigorous than the Rule 23(b)(3) requirement that common questions of law or fact predominate over questions

affecting only individual class members." *Strain v. Nutri/System, Inc.*, Civ.A. No. 90–2772, 1990 WL 209325, at *3 (E.D.Pa. Dec. 12, 1990).

that the defendant falsely advertised that it sold these items at one low price); *Strauss v. Long Island Sports, Inc.,* 60 A.D.2d 501, 401 N.Y.S.2d 233, 235–36 (1978) (refusing to certify a class of New York Net season ticket holders claiming that the team falsely advertised that Julius Erving, its star player, would play for the team but then traded him); *cf. Rodriguez v. McKinney,* 156 F.R.D. 112, 116 (E.D.Pa.1994) (claims by students that vocational school failed to inform them that they had no "ability to benefit" from the training required individualized proof of reliance). The *Strain* court expressed the problem of resolving the question of reliance in class actions based on fraud:

> In the instant case, the proposed class consists of all individuals who joined Nutri/System. Implied in that class definition is the conclusory assumption, that everyone who joined did so in reliance on the advertising.... [S]atisfaction of the reliance issue, requires each class member to narrate a story which includes individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of [*sic*] those advertisements. There are no short-cuts. The proposed class may include individuals who joined Nutri/System's upon the recommendation of a friend or for some other personal reasons. Lacking in this case is the single set of operative facts that can be applied on a class wide basis.... Because the incidents did not occur in a single place, at the same time, or under identical conditions individualized issues of causation arise.

*Strain,* 1990 WL 209325, at *6 (footnote omitted); *accord Strauss v. Long Island Sports, Inc.,* 401 N.Y.S.2d at 236.

▮▮▮▮ Sager concedes that under Pennsylvania law, common law fraud and negligent misrepresentation both require proof of justifiable reliance. *Prime Meats, Inc. v. Yochim,* 422 Pa.Super. 460, 619 A.2d 769, 773 (1993) (listing elements of common law fraud) (quoting *Rizzo v. Michener,* 401 Pa.Super. 47, 584 A.2d 973, 980 (1990)), *appeal denied,* 538 Pa. 627, 646 A.2d 1180 (1994); *Temp-*

*Way Corp. v. Continental Bank,* 139 B.R. 299, 325 (E.D.Pa.) (listing elements of negligent misrepresentation), *aff'd,* 981 F.2d 1248 (3d Cir.1992); *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 890 (1994) (same). As to these causes of action, each class member must "narrate a story which includes individualized proof of which advertisements he saw and whether they indeed [purchased bedding] in reliance of [*sic*] those advertisements." [11] *Strain,* 1990 WL 209325, at *6. Some of Sager's class members may not have even seen (or heard) the advertisements, or if they did, purchased the bedding for other reasons such as the debtor's reputation, its return policy, the recommendation of a friend or because the purchaser independently discovered that the debtor charged lower prices than any of its competitors. Every potential class member who purchased bedding during a six year period would have to demonstrate that he or she relied on the debtor's false advertisements in deciding to purchase. A court would have to conduct a separate trial on each purchaser's claim to determine reliance. At that point, the benefits of class certification are absent. *Luedke v. Delta Airlines, Inc.,* 155 B.R. 327, 330 (S.D.N.Y. 1993).

Sager nevertheless argues that the Court should not reject his class claim as a matter of law. He offers two reasons. First, neither his claim for unjust enrichment nor his statutory claim charging a violation of Pennsylvania's consumer protection law requires proof of reliance. Second, despite the assertion of fraud claims, other common issues can still predominate and justify the certification of the class. Sager's first point is wrong and his second immaterial, and neither argument provides a reason to certify his class.

▮▮▮▮ Despite his contrary contention, Sager's claim for unjust enrichment requires proof of reliance for two separate reasons. To begin with, that is precisely how he pleaded it. He charges that the debtor was "unjustly enriched" because it received higher prices "as a result of" its misrepresentations. (Complaint ¶¶ 42–43). The use of the phrase

---

11. For example, Sager alleges that he purchased his bedding in December 1992. (Complaint ¶ 18.) However, the only specific advertisement he identifies is dated October 1993, ten months later. (*Id.* at ¶ 13.) Sager obviously could not have relied on this advertisement.

"as a result of" connotes a causal connection, and hence, reliance. *See DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1241 *appeal denied,* 684 A.2d 557 (Pa. 1996). In addition, a claim of unjust enrichment under Pennsylvania law requires proof that the debtor wrongfully secured or passively received a benefit that it would be unconscionable to retain without payment. *Gordon Investments, Inc. v. Gillingham (In re Gillingham),* 143 B.R. 55, 62 (Bankr. W.D.Pa.1992), *aff'd,* 150 B.R. 907 (W.D.Pa. 1993); *Schenck v. K.E. David, Ltd.,* 446 Pa.Super. 94, 666 A.2d 327, 328 (1995), *appeal denied,* 544 Pa. 660, 676 A.2d 1200 (1996). Neither Sager nor any other member of the class can prove unconscionability or inequity without proving the underlying fraud. The unjust enrichment claim, therefore, merely duplicates the fraud claims.

Sager and the class members must also prove reliance under the Pennsylvania consumer protection law.[12] Pennsylvania's consumer protection law, Pa.Stat.Ann., tit. 73, § 201–2(4) (West 1997) (the "Act"), identifies seventeen deceptive and unfair acts, including one catch-all provision, which it declares unlawful. Act § 201–3. A purchaser of personal, family or household goods or services who suffers an injury "as a result of the use or employment" of unlawful act may recover his actual damages or $100.00, whichever is greater. *Id.* at § 201–9.2(a).[13] Sager's complaint refers to only two of the seventeen provisions: section 201–2(4)(xi) ("[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions") and the catch-all, section 201–2(4)(xvii) ("[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding").

The purpose of the Act is to prevent fraudulent conduct. *Chatham Racquet Club v. Commonwealth,* 127 Pa.Cmwlth. 209, 561 A.2d 354, 359 (1989), *appeal denied,* 527 Pa. 604, 589 A.2d 694 (1991). Section 201–2(4)(xvii), the catch-all provision, requires proof of common law fraud, *Smith v. Commercial Banking Corp. (In re Smith),* 866 F.2d 576, 583 (3d Cir.1989); *Prime Meats, Inc. v. Yochim,* 619 A.2d at 773; *Hammer v. Nikol,* 659 A.2d 617, 619–20 (Pa. Commw.Ct.1995), and thus, duplicates Sager's first cause of action. As a result, each class member must prove reliance.

Similarly, each class member must prove reliance to prevail on the specific claim of false advertising under section 201–2(4)(xi) of the Act, regardless of whether the claim sounds in contract or tort. In *DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1241, *appeal denied,* 684 A.2d 557 (Pa.1996), the court parsed the language of section 201–9.2(a), which grants the private right of action, concluding that the plaintiff must prove a causal connection to or reliance on the defendant's misrepresentation:

> Certainly, the use of the phrase "as a result of" indicates the intent of the Legislature to require a causal connection between the unlawful practice and a plaintiff's loss. Accordingly, we find that in order to proceed with their claims under the [Act], Appellants must be able to establish that the alleged misrepresentations by Appellee caused their loss.

676 A.2d at 1241; *accord Di Teodoro v. J.G. Durand Int'l,* 566 F.Supp. 273, 275 (E.D.Pa. 1983) (Act requires that the "purchase must be made in reliance on the deceptive practice alleged"); *cf. Haroco, Inc. v. American Nat'l Bank & Trust,* 747 F.2d 384, 398 (7th Cir.) (use of phrase "by reason of" in the RICO statute imposes a proximate cause require-

---

12. Following oral argument, the Court granted Sager's request for an opportunity to address the reliance issue which the debtor had raised but he had ignored during earlier briefing. Sager submitted a memorandum which went beyond this limited scope, and discussed the proof required under the consumer protection laws of other states. Indeed, he sought to expand his claim to encompass claims under the consumer protection laws of some of the other jurisdictions in which the debtor did business. Sager's complaint only invokes the consumer protection laws of Pennsylvania, and he was never granted permission, as required under the debtor's plan, to amend his claim at this late date. Consequently, the Court does not consider these new claims.

13. This provision also authorizes the court to award treble damages (but not less than $100) and attorney's fees. *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 490–91 (1987).

ment), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1984). Ignoring the need to prove a causal connection eviscerates that portion of the provision granting a private right of action, impermissibly reading "as a result of" out of statute. This runs afoul of the principle that requires a court, when interpreting statutory language, to give effect to every word. *See Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1408 (2d Cir.1993).

The two cases that Sager cites in opposition on this point do not compel a different conclusion. In *Ackerman v. Royal Bank*, No. 90–15328 (Pa.Ct.Comm.Pleas Mar. 7, 1994), the plaintiff charged that the defendant marketed certificates of deposit based upon deceptive statements and omissions regarding the interest rate. The court concluded that the specific provisions of the Act invoked by the plaintiffs were in the nature of contract claims, and did not require proof of reliance. *Id.* at 12. However, the subsequent decision of the superior court in *DiLucido*, the same court that hears appeals from the courts of common pleas, undercuts any implication in *Ackerman* that the plaintiff is not required to prove reliance to prevail under a statutory claim involving deceptive advertising.

Sager also relies on *In re Smith*, 866 F.2d 576 (3d Cir.1989). There, a property owner challenged the defendant's failure to give notice of foreclosure. The court first held that the private right of action under the Act extended beyond practices "which induce the consumer to enter into the initial agreement with the seller." *Id.* at 583. Thus, the consumer could sue on account of a post purchase deceptive act that caused injury. The plaintiff, however, relied exclusively on the catch-all provision, section 201–2(4)(xvii), and the Third Circuit Court of Appeals also held that he had to prove the elements of common law fraud. *Id.* Accordingly, Sager and the class members must recount their individual tales of reliance to prevail on each of the four claims alleged in the complaint.

Finally, Sager argues that even if each class member must prove reliance, the Court may nonetheless certify the class. It is certainly true that courts can and do certify classes in fraud actions, *i.e.*, despite the fraud claim, other common questions may still predominate. The advisory committee's note to Rule 23 provides some guidance, and suggests where a court should draw the line:

> [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made *or in the kinds or degrees of reliance by the persons to whom they were addressed.*

Fed.R.Civ.P. 23 advisory committee's note (1966 amendment) (emphasis added).

Sager's memorandum cites many cases involving certification that fall into the first category. They involve fraud claims based on uniform written representations or omissions. *See Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D.Ohio 1993) (home improvement contracts); *Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197, 200 (S.D.Ala.1992) (vehicle leases) (certified under Rule 23(b)(2) rather than Rule 23(b)(3)); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780, 1992 WL 220686, at *2–3 (N.D.Ill. Sept. 3, 1992) (fixed set of mail solicitations and standardized documents); *Heastie v. Community Bank*, 125 F.R.D. 669, 678 (N.D.Ill.1989) (financial disclosures omitted from loan documents); *McMahon Books, Inc. v. Willow Grove Assocs.*, 108 F.R.D. 32, 33 (E.D.Pa.1985) (standardized confirmation form); *Ackerman v. Royal Bank*, slip op. at 1 (certificates of deposit). In such cases, the court may often infer reliance. *Weiss*, 1992 WL 220686, at *2 (reasonable to believe class members relied on a "fixed set" of fraudulent mail solicitations); *Strain*, 1990 WL 209325, at *6 (distinguishing *Heastie* where "the fixed set of fraudulent statements ... can be presumed to have been heard and relied upon by each member of the class"); *cf. Rodriguez v. McKinney*, 156 F.R.D. at 117 (court can infer that students relied on grant of loans when they

enrolled in vocational school run by defendants); *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 679 (D.Kan.1989) (in class action by employees involving unpaid commissions, "the salespersons' reliance on the plans is demonstrated simply by their employment with MCI").

▇▇▇ In contrast to the cited authorities, Sager's complaint falls into the second category of cases described in the advisory committee's note. His class must rely on diverse written (and possibly oral) advertisements. These require proof of individual reliance and create the problem that the *Strain* court discussed. The complaint implies that the debtor made substantially uniform misrepresentations, but a closer reading indicates otherwise. The complaint alleges, in several places, that the debtor made misrepresentations about the "regular," "original" or "suggested retail" prices (Complaint ¶¶ 8, 9, 10, 11, 12, 13, 15, 16); the quotation marks were supplied by Sager. The one advertisement that Sager quotes, however, does not use any of these terms nor quote any price. (*See id.* at ¶ 13.) Instead, it refers to "competitive prices" and the "best price," and further, offers to match any other seller's "lower advertised price." Thus, the advertisement states that the debtor will be competitive with the prices charged by other sellers, but does not refer to any fixed or objective price to compare with the debtor's.[14] Assuming that the debtor made representations that actually track the quoted phrases in the complaint, the Court must conclude that the debtor did not make uniform representations. The nonuniform representations coupled with the need for each mem-

ber to prove reliance distinguishes Sager's claim, and weighs against class certification.

The other cases that Sager cites can also be distinguished. Several involve certification in connection with pendent state law fraud claims asserted as part of a federal securities fraud action. A court will presume reliance in connection with the federal claims under the "fraud on the market" theory, and hence, reliance is not a predominant question where the state claims are based on the same operative facts. *See e.g., Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 257 (D.N.J.1992); *Walsh v. Chittenden Corp.*, 798 F.Supp. 1043, 1055 (D.Vt.1992); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F.Supp. 1196, 1216 (S.D.N.Y.1992); *see In re ORFA Sec. Litig.*, 654 F.Supp. 1449, 1459–62 (D.N.J.1987) (discussing split of authority concerning certification of pendent claims.) Here, Sager does not allege any fraud claims that do not require proof of reliance. In addition, Sager also cites products liability class actions which include fraud claims, but the products liability issues—the existence of a defect, the manufacturer's knowledge and warranties—are predominant and justify certification. *See In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 461 A.2d 736, 747 (1983); *Delgozzo v. Kenny*, 266 N.J.Super. 169, 628 A.2d 1080, 1091 (1993). No similar, non-fraud issues predominate in any of Sager's claims.

Based on the foregoing, the Court concludes that Sager's claims do not satisfy the requirements of Rule 23. They are garden variety fraud claims, and each class member must prove his or her reliance on the allegedly false advertising. Hence, reliance is a predominant question, but the factual circumstances are not common to the class.

**14.** Perhaps recognizing that the quoted advertisement does not support the fraud claim, the complaint suggests that the offer to match any competitive price is illusory. It refers to a conspiracy among licensors, manufacturers and retailers to eliminate competition and maintain artificially high prices. (Complaint ¶ 14.) The plaintiff must, however, plead a conspiracy with the same specificity imposed on a fraud claim under Fed.R.Civ.P. 9(b). *See Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *Krank v. Fulton Bank*, Civ.A. No. 91–4003, 1991 WL 246880, at *4 (E.D.Pa. Nov. 19, 1991). He must set forth the period of the conspiracy, its object and the

actions taken by the conspirators to achieve that object, *In re Products Liab. Litig.*, No. MDL 1014, 1996 WL 482977, at *7 (E.D.Pa. Aug. 22, 1996), with sufficient factual particularity to apprise the defendant of the basis of the plaintiff's claims. *Krank*, 1991 WL 246880, at *4. Sager's allegations do not identify the conspirators, the period of the conspiracy or any specific act taken in furtherance of the conspiracy. The complaint is obviously insufficient to make out a conspiracy claim, and cannot support an interpretation of the debtor's advertisements that the words themselves contradict.

**376**

## C. The Benefits and Detriments of the Class Claim

▮ Even if Sager's claim met the requirements of Rule 23, there are additional, bankruptcy-related reasons why it may not proceed as a class claim. The class claim device must enable the parties and the court to realize the same benefits that class actions confer in civil litigation. *In re Mortgage & Realty Trust,* 125 B.R. at 580. These benefits typically include increased efficiency, compensation to injured parties, and deterrence of future wrongdoing by the debtor. *In re American Reserve Corp.,* 840 F.2d at 489; *In re Mortgage & Realty Trust,* 125 B.R. at 580. On the other hand, a bankruptcy case can proceed no faster than its slowest matter, *In re American Reserve Corp.,* 840 F.2d at 491, and a class action may "gum up the works" because until complete, the bankruptcy court cannot determine the entitlement of the other creditors. *Id.; accord In re Thomson McKinnon Secs., Inc.,* 141 B.R. at 32.

▮ A bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum. *In re American Reserve Corp.,* 840 F.2d at 489, 490. Further, while the class action ordinarily provides compensation that cannot otherwise be achieved by aggregating small claims, *id.* at 489, the bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions. In addition, there may be little economic justification to object to a modest claim, even where grounds exist. Hence, a creditor holding such a claim may not have to do anything more to prove his case or vindicate his rights. *See* Federal Bankruptcy Rule 3001(f) (proof of claim, properly executed and filed, is *prima facie* evidence of validity and amount of claim).

On the other hand, the class claim will not deter an insolvent, non-operating debtor's management or shareholders, or induce them to police future conduct. *Id.* at 490–91. Here, the debtor has confirmed a liquidating plan that wipes out equity. The managers have moved on to other jobs—the debtor has closed its doors—and the prosecution of the class action will probably not affect how they act in the future.

The only other consideration concerns compensation to the injured parties. However, the prospect of compensation must be significant to justify the certification of a class claim. Small claims make bad class claims and should not be allowed. "Suits for very small stakes may hold out little prospect of either compensation or deterrence; the bankruptcy court may exercise discretion to reject these, for both Rule 9014 and Rule 23 give the court considerable discretion to consider the benefits and costs of class litigation." *Id.* at 492. Here, the stakes are very small. Sager paid only $922.15 for the bedding, and the total damage—the greater of his actual damage or $100.00 (Act § 201–9.2)—is quite modest.

Further, where the stakes are small, the class device may become a "lawyer's vehicle." *Id.* at 490. The class members will not bother to monitor what their lawyer does, and the lawyer may be quick to settle for his own benefit and at the expense of his clients:

> Because the lawyer-champion is interested in his reward, which will be less than the total gain of the class, the lawyer may settle too quickly rather than risk all in exchange for the prospect of a higher recovery he will not obtain, or the lawyer may accept a settlement package slanted in favor of the fees component.

*Id.*

The Sager claim is a textbook example of how the class device can become a "lawyer's vehicle." While pursuing the claim through the ADR program, Sager offered to settle with the debtor on terms that favored his lawyers at the expense of the class.[15] His attorneys proposed that the debtor send each

15. The settlement proposal is set forth in a June 27, 1995 letter from Sager's counsel to the debtor's lawyers in the removed, class action. Although marked "Privileged & Confidential: For Settlement Purposes Only," Sager attached the settlement letter as Exhibit "F" to his *Memoran-* *dum of Law in Support of M.H. Sager's Opposition to Debtors' Motion to Disallow and Expunge Proof of Claim Number 1630 of M.H. Sager and in Support of Claimant M.H. Sager's Cross–Motion to Enforce the Bankruptcy Court's June 24, 1994 ADR Order,* dated Dec. 4, 1996.

class member two non-transferable 20% discount coupons, good for ninety days. Class members could use each coupon to purchase ancillary bedding items like sheets, pillow cases and bedspreads. To compensate counsel, presumably for procuring this settlement, the debtor would pay legal fees and expenses in the amount of *$250,000.00.*

It may be hard to quantify the value of the proposed discount, but a lot of people will have to buy a lot of sheets and pillows within 90 days to justify a legal fee of $250,000.00.[16] It appears that the settlement package is slanted toward the legal fee component, and provides little actual compensation to any of the class members. The only beneficiaries of class certification, therefore, are Sager's lawyers. Given the absence of any prospect of significant compensation or deterrence, and in light of its disruptive effect, *see* part A, *supra,* the claim should not be permitted to proceed as a class claim.

### D. The Cross–Motion

In light of the foregoing, the cross-motion must be denied in all but one respect. There is no reason to grant relief from the automatic stay to permit Sager to pursue a class action in the federal district court since there is no class action to pursue. Those class members who did not file timely, individual claims are now barred from collecting any money from the debtor, and any that did would have presumably received a dividend. For the same reason, I deny the motion to compel the liquidation of the class claim through the ADR program.

The only remaining consideration is Sager's individual claim. Although I have the jurisdiction to liquidate it, it falls within the ADR program where, I assume, it can be liquidated with less time and expense to the parties. Consequently, the cross-motion is granted to the extent of directing the parties

to liquidate Sager's individual claim through the ADR program.

Settle order on notice.

16. If we assume that the legal fee component represents one-third of the settlement amount, the settlement proposes to compensate the injured class members with a package worth $500,000.00. To actually cost the debtor that amount, 5,000 class members would have to purchase $500.00 worth of ancillary bedding materials (actually paying only $400 with their 20% coupons) during the 90 day period. Either this represents an incredible run on sheets, or the settlement is tilted in favor of the lawyers.