**In re SACRED HEART HOSPITAL OF NORRISTOWN, Debtor.**

**Bankruptcy No. 94–13275DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 1, 1995.

See also 175 B.R. 543.

William Slaughter, Vincent J. Marriott, III, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for debtor.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, John J. Koresko, V, Koresko & Noonan, Norristown, PA, for movants.

Joel H. Levitin, Dechert Price & Rhoads, Philadelphia, PA, for creditors' committee.

Claudia Z. Springer, Duane, Morris & Heckscher, Philadelphia, PA, for Mun. Bonds Investors Ins. Co.

J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Midlantic Bank.

Paul E. Cherry, Wayne, PA, for Michelle D. Johnson.

W. Jeffrey Garson, Cohen, Shapiro, Polisher, Sheikman & Cohen, Philadelphia, PA, for AllMed Financial Corp.

Mark S. Halpern, Furman & Halpern, P.C., Bala Cynwyd, PA, for Skilled Nursing Professional Services.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant motion seeks to have this court determine that counsel who has solicited the representation of over 100 former employees of a closed hospital debtor be permitted to file a class proof of claim for all other former employees, estimated by the Movants at about 700 additional persons, and effectively extend the bar date for employee creditors who have not yet filed claims in accordance with the class determination. While we agree with the Movants that a class proof of claim is an appropriate device in certain circumstances, we find that such circumstances are narrowly defined, and that the instant facts do not warrant the application of this device. In particular, we note that the putative class in issue was not certified by a nonbankruptcy court; there is no evidence that the Debtor excluded, or failed to provide proper notice to, the putative class members; and that extension of the bar date for employees only would not be equitable under the circumstances. Therefore, the Motion before us will be denied.

### B. PROCEDURAL AND FACTUAL HISTORY

Before the commencement of this bankruptcy case on May 25, 1994, SACRED HEART HOSPITAL OF NORRISTOWN ("the Debtor") operated an acute-care non-profit hospital in Norristown, Pennsylvania. The Debtor alleges that it employed approximately 410 full-time and 371 part-time employees at the time of its closure, which occurred on May 18, 1994, and caused it to terminate substantially all of its employees.

The Debtor agrees that most of its full-time former employees, most of whom were allegedly paid all pre-petition wages due, were also entitled to receive payments for loss of certain fringe benefits, primarily vacation pay, which payments have not been made. As a result, the schedules and statement of financial affairs filed by the Debtor shortly after the commencement of the case reflect a total of $691,101 owed to 591 scheduled former employees of the Debtor.

However, the schedules do not reflect the extent to which such claims are entitled to priority under 11 U.S.C. § 507(a)(3), which would appear to require the former employees to file proofs of claim in order to obtain priority status of their respective claims. Also, no 60–day pre-termination notice was provided to any of the employees under the Worker Adjustment and Restraining Notification Act, 29 U.S.C. §§ 2101–09 ("WARN"), which the Movants allege gives rise to liability under that Act. Finally, the Movants claim that a total of 870 individuals are potential former employee-claimants, not only the 591 scheduled by the Debtor.

Just prior to the bankruptcy filing, on May 20, 1994, John J. Koresko, V, Esquire ("Koresko"), a Norristown sole practitioner who does some bankruptcy work in our court, took out a full-page advertisement in *The Times Herald,* a newspaper of general circulation in the Norristown area, advising employees of the Debtor of their right to assert claims against the Debtor and urging them to retain him to represent their interests on a contingent-fee basis. The day after this bankruptcy case was filed, on May 26, 1994, Koresko filed a motion on behalf of a former employee named Douglas K. Stiteler referencing a class-action lawsuit filed by Koresko on Stiteler's behalf on May 23, 1994, in state court, seeking, *inter alia,* to have an official committee of employee-creditors appointed and allowing him to represent that committee. A hearing was scheduled on this motion along with a hearing on the initial cash collateral motion in the case on May 31, 1994, but Koresko's motion was continued at that and several times thereafter and was ultimately withdrawn on August 3, 1994.

Meanwhile, probably as a result of the advertisement, Koresko was retained to represent approximately 120 of the Debtor's former employees, each for whom he filed individual proofs of claim in this case. Koresko also filed a purported class proof of claim on behalf of all former employees on June 28, 1994. On August 5, 1994, Koresko further filed a motion for authority to prosecute employees' claims against the Debtor on a class-wide basis to replace his motion which had been withdrawn on August 3, 1994. This motion was actively opposed by the United States Trustee and Michelle D. Johnson, a former employee who had obtained separate counsel. The Debtor, the Official Committee of Unsecured Creditors ("the Committee"), and the Debtor's largest creditor, Midlantic Bank, successor to Continental Bank, as trustee for bondholders, and its insurer (collectively, "the Bank"), all indicated that they did not oppose the motion insofar as it requested permission to file a class proof of claim. However, they did not support other endeavors which the motion suggested might be undertaken, such as the employees' attempting to purchase the hospital facility themselves with certain pension funds.

After a hearing on August 17, 1994, this court denied this motion, ruling as follows:

> The motion is denied. Whether a class claim can be filed at all is open to question. In any event, the class claimant must meet the requirements of F.R.B.P. 7023 and F.R.Civ.P. 23 to proceed as class representatives [sic]. We find that there is insufficient evidence that the named party is typical of class members and we find no showing of adequacy of representation. Specifically, given proposed counsel's inexperience, erratic performance to date, and apparent lack of resources renders [sic] him of questionable ability to conduct this litigation and properly represent the class.

This ruling was based on our finding that Stiteler had no insight into Koresko's scheme, or any desire on his part, to purchase the hospital. We were also concerned that Koresko had acted improperly in sending all putative class members a letter stating that he would assume that they desired him to represent them, on a contingency basis, unless he heard from them within five days. We also considered Koresko's limited bankruptcy experience and his lack of any experience in actual class-action litigation. Finally, we found his failure to pursue his initial motion and his refiling another similar motion at a significantly later time, and his ill-conceived plan to purchase the hospital, as exhibitions of erratic behavior which would ill serve the class.

Koresko filed a motion to reconsider this denial of class treatment of employee-claims on August 26, 1994, but failed to serve all interested parties. The court therefore apparently lacked jurisdiction to consider it. *See, e.g., Smith v. Evans,* 853 F.2d 155, 157–62 (3d Cir.1988); and *In re Campfire Shop, Inc.,* 71 B.R. 521, 523–24 (Bankr.E.D.Pa. 1987). After several continuances, that motion was subsequently withdrawn on November 16, 1994.

Meanwhile, administration of the case proceeded. On September 1, 1994, Montgomery County successfully bid $7.05 million for the Debtor's primary asset, its hospital facility. After a status hearing of September 13, 1994, the Debtor was ordered to file a plan and accompanying disclosure statement on November 22, 1994. This deadline date for filing the plan and disclosure statement was ultimately extended to January 13, 1995, and, after filings in accordance therewith, a disclosure statement hearing is now scheduled on February 8, 1995. An adversary proceeding by a pre-petition provider of nursing services to the Debtor to declare certain accounts receivable subject to a trust in its behalf was decided favorably to the Debtor in an Opinion of December 2, 1994, reported at 175 B.R. 543 (Bankr.E.D.Pa.1994). Another proceeding involving the secured status of the Bank was settled just prior to final briefing on December 16, 1994. Most contested issues in the case were therefore resolved by the year's end.

On October 13, 1994, this court entered an Order establishing December 30, 1994, as the bar date for filing proofs of claim in this case. On October 20, 1994, the Debtor notified all of its creditors, including all of its scheduled former employee creditors, of the bar date by sending them copies of the court's bar

date Order. In addition, the Debtor caused notice of the bar date to be published twice, in consecutive weeks, in *The Times Herald* and in *The Philadelphia Inquirer*. There has been no evidence presented tending to establish that any employee failed to receive actual notice of the bar date.

On December 19, 1994, over six months after the commencement of the case, four months after the denial of the first motion for authority to pursue employee claims on a class-wide basis, two months after dispatch of the bar date notice, and only eleven days before the bar date itself, the motion before us, entitled Motion of Nominal Representatives [including Candace Anders, Joanne Weaver, Joan Levanios, and Shirley Davis in addition to Stiteler; collectively, "the Movants"] for Leave to File a Class Proof of Claim, Class Certification, Authority to Pay Fees and Expenses Out of Class Claim Proceeds, and Extension of the Bar Date ["the Motion"] was filed. Named as co-counsel to Koresko, on the Motion and for the class, were Edward C. Toole, Jr., Esquire; Pace Reich, Esquire; and Pauline K. Morgan, Esquire, all for the bankruptcy department of a prestigious Philadelphia law firm, Clark, Ladner, Fortenbaugh & Young ("Clark"). The instant Motion was opposed by not only the United States Trustee and former employee Johnson, but also, presumably in light of the possibility that granting the Motion at this stage would require rethinking of certain aspects of the proposed Debtor's plan, by the Debtor, the Committee, and the Bank as well.

This court temporarily extended the bar date for all putative class members until January 4, 1995, when it could first hear the matter in light of the impending holidays. The only testimony at the hearing, from putative class member Anders and the Debtor's acting President, Terrence Cunningham, was extremely brief. Although a very sophisticated and well-educated individual, Anders testified that she would not have known of her rights to make a WARN or pension claim had she not retained counsel. Cunningham testified that he doubted whether any pension claims had merit. It was clear from this testimony that all employees were acutely aware of the Debtor's bankruptcy due to their loss of employment and the attendant publicity regarding this case. The Debtor advised that, as of the bar date, 178 employees had filed proofs of claim, 14 of whom allegedly did not have claims scheduled by the Debtor.

After the hearing, the court entered an Order stating that

[t]he Bar Date shall not be extended further for any parties. Any extension of the Bar Date may result only from our granting the Motion or granting relief for cause shown in individual circumstances.

The interested parties were allowed until January 18, 1995 (proponents), and January 25, 1995 (opponents), to brief the Motion.

## C. DISCUSSION

### 1. CLASS PROOFS OF CLAIM MAY WELL BE APPROPRIATE WHERE THE CLASS IN ISSUE HAS ALREADY BEEN CERTIFIED IN NON–BANKRUPTCY PROCEEDINGS AND WHERE CLASS PROCEDURES ARE NECESSARY TO PROVIDE NOTICE TO A PARTICULAR CREDITOR BODY

Prior to the decision in *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988), commentators agree that there was a consensus among courts at every level that no sort of class proof of claim was cognizable in a bankruptcy case in any circumstances. L. Kaye, *The Case Against Class Proofs of Claim in Bankruptcy*, 66 N.Y.J.L.REV. 897, 900 (1991) ("Kaye"); and J. Wolfson, *Class Actions in Bankruptcy: A Clash of Policies Reconciled*, 5 BANKR.DEV.L.J. 391, 392–94 (1988) ("Wolfson"). Fairly characterizing the reasoning which prevailed prior to the decision in *American Reserve*, the Debtor argues that "a self-designated representative of a creditor" is not an entity permitted to file a claim pursuant to 11 U.S.C. § 501 or Federal Rules of Bankruptcy Procedure ("F.R.B.P.") 3001 and 3003. Cases supporting the Debtor's argument include *In re Standard Metals*, 817 F.2d 625 (10th Cir.1987), *vacated on reh. sub nom. Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (10th Cir.1987), *cert. denied*, 488 U.S. 881, 109 S.Ct. 201, 102

L.Ed.2d 171 (1988); *In re Energy Resources Co.,* 82 B.R. 172 (D.Mass.1987); *In re Bicoastal Corp.,* 133 B.R. 252, 255 (Bankr. M.D.Fla.1991); *In re Thomson McKinnon Securities, Inc.,* 133 B.R. 39, 40 (Bankr. S.D.N.Y.1991); *In re Mechem Financial, Inc.,* 125 B.R. 151, 153 (Bankr.W.D.Pa.1991); *In re Allegheny International, Inc.,* 94 B.R. 877, 880 (Bankr.W.D.Pa.1988); *In re Peters,* 90 B.R. 588 (Bankr.N.D.N.Y.1988); *In re Vestra Industries, Inc.,* 82 B.R. 21, 22 (Bankr.D.S.C.1987); *In re Texaco, Inc.,* 81 B.R. 820, 826–27 (Bankr.S.D.N.Y.1988); *In re Electronic Theatre Restaurants Corp.,* 57 B.R. 147 (Bankr.N.D.Ohio 1986); *In re Continental Airlines Corp.,* 64 B.R. 874, 880 (Bankr.S.D.Tex.1986); *In re Johns–Manville Corp.,* 53 B.R. 346 (Bankr.S.D.N.Y.1985); *In re Baldwin–United Corp.,* 52 B.R. 146, 147 (S.D.Ohio 1985); and *In re Computer Devices, Inc.,* 51 B.R. 471 (Bankr.D.Mass.1985). Indeed, in a case arising under the Bankruptcy Act, the Third Circuit Court of Appeal held that a class proof of claim was not appropriate in a reorganization proceeding. *Securities & Exchange Comm'n v. Aberdeen Securities Co.,* 480 F.2d 1121, 1128 (3d Cir.), *cert. denied sub nom. Seligsohn v. Securities & Exchange Comm'n,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973).

*American Reserve* involved a class proof of claim filed by the named representative of a class of policyholder-customers of the debtor insurance company in a class action commenced in state court over two years before the underlying bankruptcy case had been filed. 840 F.2d at 488. The court ultimately did no more than reinstate, on an interlocutory appeal, an order of the bankruptcy court which permitted a class action to be filed if the requirements of Federal Rule of Civil Procedure ("F.R.Civ.P.") 23 were met. *Id.* at 493–94. However, the rejection of the argument that the Code and Rules did not absolutely preclude class proofs of claim was not only unprecedented at the time, but also it turned out to be revolutionary. Since *American Reserve,* almost every court faced with a class proof of claim has not followed the earlier cases dismissing class claims out of hand, but has proceeded to analyze whether the class device is appropriately applied to that particular fact situation and whether the prerequisites of F.R.Civ.P. 23 have been satisfied in that particular instance.

This approach appears in the two other Courts of Appeals' decisions addressing the propriety of class claims after *American Reserve, Reid v. White Motor Corp.,* 886 F.2d 1462 (6th Cir.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); and *In re Charter Co.,* 876 F.2d 866 (11th Cir.1989), *cert. denied,* 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990). Both involved claims filed on behalf of class representatives in class actions pending in non-bankruptcy courts, which had, moreover, been certified pre-petition by those courts as proper class actions. *Reid,* 886 F.2d at 1463, *Charter,* 876 F.2d at 868. As had the court in *American Reserve,* the *Charter* court merely held that F.R.Civ.P. 23, through F.R.Civ.P. 7023, applied to a class proof of claim, and a determination that a class could not be certified in any event was remanded for that determination. 876 F.2d at 876–77. In *Reid,* the court affirmed a denial of class certification, holding that a class claim could be filed in certain circumstances, but that the particular class representative filing the claim before the court was ill-chosen and had proceeded in violation of F.R.Civ.P. 23 and F.R.B.P. 2019. 886 F.2d at 1470–72.

Several of the lower court decisions which have followed *American Reserve* have also not rendered actual determinations that class proofs of claim could be filed in those particular cases. In *In re Amdura Corp.,* 170 B.R. 445, 446, 453 (D.Colo.1994), a motion by representatives of a certified class was remanded for the bankruptcy court to decide whether to apply F.R.B.P. 7023 to allow a class claim or not. In *In re Wang Laboratories, Inc.,* 164 B.R. 401, 404 (Bankr.D.Mass.1994), the bankruptcy court, considering a claim by representatives who had filed a class action in federal district court, *sua sponte* "withdrew the reference" of the certification issue to the district. In *Wilson v. Valley Electric Membership Corp.,* 141 B.R. 309 (E.D.La. 1992), the district court merely denied a motion to dismiss the class representatives' motion for class certification on the ground that such a claim was totally impermissible.

Class proofs of claim were permitted to be filed in *In re Zenith Laboratories, Inc.*, 104 B.R. 659 (D.N.J.1989); *In re Chateaugay Corp.*, 104 B.R. 626 (S.D.N.Y.1989); and *In re Retirement Builders, Inc.*, 96 B.R. 390 (Bankr.S.D.Fla.1988). *Zenith*, 104 B.R. at 660, and *Retirement Builders*, 96 B.R. at 391, both involved classes certified by nonbankruptcy courts prior to filing, and the respective class representatives were authorized to represent the respective class members in bankruptcy court. *Chateaugay*, 104 B.R. at 627–28, involved a class action pending in a nonbankruptcy forum for over 18 months prior to the bankruptcy filing.

Both Kaye and Wolfson express concern about the clash of certain bankruptcy law principles with the utilization of the class-claim device. Kaye believes that the class device is simply irreconcilable with the requirement that every claimant must file a claim by the bar date, and, therefore, she disputes the wisdom of the holding in *American Reserve* that class claims can ever be filed. 66 N.Y.U.L.REV. at 928–31. Kaye also notes that the procedure to determine claims which a bankruptcy court may follow in a certified class proof of claim situation under F.R.Civ.P. 23(d)(2) will often simply replicate the bankruptcy case bar date process, rendering the class-claim issue an unnecessary intrusion. *Id.* at 931–32. Wolfson is more tolerant of *American Reserve*, but would confine its application to a situation "as was the case in *American Reserve*, where the debtor refuses to schedule or notify class members, ..." 5 BANKR.DEV.L.J. at 427.

■ In light of the foregoing, we believe that the class proof of claim device may be utilized in appropriate contexts, but that such contexts should be chosen most sparingly. The situation where a class has been certified pre-petition by a nonbankruptcy court and the representative files a claim on behalf of a class of parties the adequacy of the representation of whose interests is uncertain, or where a class action has been filed a considerable time pre-petition and allowed to proceed as a class action in a nonbankruptcy forum, are the best candidates for such treatment. In these cases, it is very likely that certain procedures for notifying the unnamed

class members about the class issue and the members' rights have been devised and followed pre-petition. In fact, it can be convincingly argued that it would be wasteful for the bankruptcy court, in its claims process, to either replicate any notice procedures already utilized in the nonbankruptcy court class-action process, or for the bankruptcy court to undertake to provide for different notices which could very well confuse unnamed class members to their unfair prejudice.

■ If the F.R.Civ.P. 23 or like requirements have been deemed satisfied by a nonbankruptcy forum, it seems likely that the class representatives will be deemed by the bankruptcy court to meet those requirements as well. The issue may even be deemed *res judicata.* However, in cases where the class action and the class's representation have not been certified pre-petition by the nonbankruptcy forum, there is little doubt that the bankruptcy court must rigorously examine whether the class representative in the bankruptcy case meets those requirements.

■ Finally, even if the foregoing requirements are met, the bankruptcy court must weigh the issue of whether it is appropriate to give the class members what may amount to an additional opportunity to meet an otherwise applicable bar date. If the unnamed class members are largely a group which the debtor has refused to notify individually, as Wolfson indicates was true of the class members in *American Reserve*, or if they are in large part what this court referred to as "unknown creditors" in *In re West Coast Video Enterprises, Inc.*, 174 B.R. 906, 909–10 (Bankr.E.D.Pa.1994), then the class device may provide the only form of notice to such parties and be advisable to utilize. On the other hand, if the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable.

■ Finally, the impact of the timing of the filing of a class claim or motion on any bar dates established in the bankruptcy case must be considered. Known claimants of all

kinds who have received actual notice of the bar date must proceed through the claims process on a level playing field. Tinkering with an established bar date may raise due process claims of parties who have timely filed claims by originally-established bar dates, since it gives late filers a second bite at an apple which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely filer's share of a distribution. On the other hand, bar dates are generally not binding on known creditors who have not received appropriate notice of bar dates, and they may not be binding on unnotified unknown creditors. Therefore, a class claim and motion which has the effect of expanding the bar date for unnotified creditors is often appropriate to comport with due process of law and expand the scope of a debtor's bankruptcy discharge. On the other hand, an action which expands the bar date for notified creditors may itself violate due process.

▉ Timing is also significant. The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors. It is clearly disruptive to the formulation of a plan to frustrate a debtor's logical assumptions regarding the amounts of total claims by compelling the debtor to alter or extend an established bar date. It is regretful enough if this disruption occurs as a result of a debtor's belated enlightenment regarding a previously unknowable or unknown claim, or an error by the debtor in providing notice. Thus, clearly, a mere dispensation requested by a creditor or a group of creditors is not a basis to justify such disruption.

### 2. THE INSTANT MOTION MUST BE DENIED

▉ Applying the foregoing concepts to the instant facts leads rather clearly to the conclusion that the instant Motion must be denied.

First, we note that the putative class and its representatives has never been certified as appropriate by a nonbankruptcy court. It is true that Koresko filed a pre-petition state court class action on behalf of virtually the identical class of former employees which are the focus of the Motion and that the certification process was stayed by the Debtor's bankruptcy filing. However, the state court class action preceded the instant bankruptcy filing by only two days. It is impossible to draw any inferences in favor of the propriety of the class or its representative from this history. We note that none of the cases which have allowed class proofs of claim have been confronted with a "virgin class" comparable to the instant putative class.

The presence of such a "virgin class" necessitates heightened analysis of whether F.R.Civ.P. 23 requirements are satisfied here. In our Order of August 17, 1994, we distinctly held that the movant failed to meet the typicality and adequacy of representation requirements of F.R.Civ.P. 23(a)(3) and (a)(4), respectively. Given the puny record made on the Motion at the hearing of January 4, 1995, there is some real force to the Debtor's argument that the "law of the case" doctrine, see In re River Village Associates, 161 B.R. 127, 134 (Bankr.E.D.Pa.1993); and In re Cole, 89 B.R. 433, 436 (Bankr.E.D.Pa. 1988), should bar a finding that the F.R.Civ.P. 23 requirements are now satisfied, thus precluding the Motion from being granted by allowing a different disposition than we reached on August 17, 1994, on virtually the same motion and record. Apparently, it is the Movants' position that the mere presence of the sophisticated Anders and the well-qualified Clark firm in contrast to the unsophisticated Stiteler and inexperienced Koresko are sufficient to give a different turn to the instant picture, as compared to that on August 17, 1994.

Without deciding the F.R.Civ.P. 23(a)(3), (a)(4)/"law of the case" issue at this juncture, we will proceed to discussion of the decisive issue of weighing the effect of extending the bar date for the former employees who have not filed proofs of claim by rendering them unnamed members of the putative class. We find that most, if not all, of the unnamed class members have had unusually stark, clear, and hence effective notice of the Debtor's bankruptcy case as a result of the abrupt loss of their employment, followed by intense

media publicity surrounding the filing itself and the sale of the Debtor's hospital facility to Montgomery County. Moreover, the Debtor claims to have provided actual notice of the bar date to all known class members. If, as the Movants apparently contend, the Debtor missed several potential claimants, it is doubtful that Koresko's own media blitz and mailings missed them. The instant facts therefore suggest that what is before this court is quite at the opposite end of the spectrum from the situation in *American Reserve,* where Wolfson found that no notice of the bankruptcy or the bar date was given to the putative unnamed class members at all.

The timing of the filing and prosecution of the Motion and its predecessor also weighs heavily against the Movants. Although Koresko seems to have understood the significance of active participation in this bankruptcy case from its outset, he somehow let the disposition of the class issue drift from the earliest days, when it was premature, to later, crucial stages in the case, without resolution. After the denial of the initial motion seeking permission to prosecute a class claim on August 17, 1994, the shortfalls of his efforts became quite obvious. Nevertheless, although the reconsideration motion was filed, it was crucially not properly served and was dropped only after three critical months, during which numerous significant events in the case occurred, had passed. Then, despite Clark's apparent participation as co-counsel in November, the instant Motion, with Clark as its visible new proponent, was filed only at the eleventh hour, eleven days before the bar date was to run and just prior to the holiday season, which rendered immediate scheduling of a hearing predictably problematical.

It is very difficult to explain the strategy of these actions, unless there was an attempt to create an emergency which would strike the court's sympathy in favor of the otherwise compelling circumstances of the Debtor's ex-employees. However, this course of events would cause the granting of this Motion to effect very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case, in which

there is presently a plan before us for imminent confirmation. In light of the foregoing circumstances, we continue to doubt whether Koresko, even with Clark as his last-minute partner, has made out a compelling case of adequacy of his/their representation of the putative class, even though other elements of F.R.Civ.P. 23 might easily be satisfied. *See Baby Neal v. Casey,* 43 F.3d 48, 54–63 (3d Cir.1994); *In re Young,* 1994 WL 88992, slip op. at *3 (Bankr.E.D.Pa. March 11, 1994); and *In re Watts,* 76 B.R. 390, 396–401 (Bankr.E.D.Pa.1987), *aff'd,* 93 B.R. 350 (E.D.Pa.1988), *rev'd on other grounds,* 876 F.2d 1090 (3d Cir.1989) (commonality and typicality appear satisfied, despite variety in fact patterns of individual class members, as long as a core of common issues among class members exists).

In any event, it is manifestly clear that it would be unwarranted, unfair, and possibly violate the due process rights of other creditors of the Debtor to effectively extend the bar date to benefit (1) the members of the putative class who failed to exercise vigilance; and (2) the pocketbook of the putative class's counsel, who obviously will seek a contingency fee from all unnamed class members who fail to opt out of the putative class. As Johnson's opposition throughout the efforts to prosecute a class claim manifest, the Motion could have the effect of penalizing vigilant employees to the benefit of those who ignored their known rights and their arguably opportunistic counsel.

■ We note that the Debtor and the Bank, in their respective briefs in opposition to the Motion, have suggested that a class certification might properly be authorized by this court if the class definition were confined to employees who have actually filed proofs of claim. This court is disinclined to grant the Motion, even in this truncated form, for several reasons. One is that the Movants have not requested this alternative relief, and we think that it may be ill-advised for us to grant them a limited relief which they may not want. Second, we are not clear what such an order would accomplish. It would not expand the number of former employee-creditors or extend the bar date as to them, which is the main practical thrust of the

Motion. If the goal is to try like issues of WARN or pension claims of many former employees in one, as opposed to numerous, trials, we are certain that common counsel can easily devise a method to accomplish this end whether we certify a class or not. If not, the court would probably devise a method to do so itself.

*D. CONCLUSION*

For all of the reasons set forth herein, the Motion in issue is denied in its entirety in a separate Order.