In re **FIRST INTERREGIONAL EQUITY CORPORATION, Debtor.**

**Bankruptcy No. 97–02165 (SIPA)(RG).**

United States Bankruptcy Court, D. New Jersey.

Nov. 30, 1998.

---

Rabinowitz, Trenk, Lubetkin & Tully, P.C. by Jonathon I. Rabinowitz, West Orange, NJ, for Thomas Hessert, Marilyn Hessert, TJH Investment Corporation and TJ Hessert Construction Salaried Employees Trust.

Sills Cummis Zuckerman Radin, Tischman Epstein & Gross, P.A. by Jack M. Zackin and Eric W. Sleeper, Newark, NJ, for Harrison J. Goldin, Chapter 11 Trustee of First Interregional Advisors Corp.

Cole, Schotz, Meisel, Forman & Leonard, P.C. by Stuart Komrower, Hackensack, NJ, for Official Committee of Unsecured Creditors of First Interregional Advisors Corporation.

McCarter & English, L.L.P. by Hayden Smith, Jr., Newark, NJ, for Richard W. Hill, SIPA Trustee for First Interregional Equity Corporation.

Securities Investor Protection Corporation by William M. Seckinger, Washington, DC, for Securities Investor Protection Corporation.

## OPINION

ROSEMARY GAMBARDELLA, Chief Judge.

Presently before this Court is the motion of Thomas Hessert, Marilyn Hessert, TJH Investment Corporation and TJ Hessert Construction Salaried Employees Trust (the "Hesserts" or Proposed Class Plaintiffs) seeking approval of a Class Proof of Claim and Certification of the Class action pursuant to Bankruptcy Rules 7023 and 9014 and F.R.C.P. 23. The Chapter 11 Trustee for First Interregional Advisors Corp. ("FIAC") and the Official Committee of Unsecured Creditors for FIAC have joined in support of the motion to approve the propriety of a class claim and to certify the putative class in the First Interregional Equity Corp. ("FIEC") liquidation. According to the Verified Statement of the Proposed Class representatives, each claim of each member of the putative class arises from a transaction whereby each member purchased interests in lease(s) with government entities and/or municipalities for office equipment and/or vehicles purportedly from FIAC. The Proposed Class Representatives assert that each member of the proposed class is a customer of FIEC with claims for cash and/or securities and should be entitled to the protection of SIPA. Movants argue that a Class Proof of Claim is appropriate in the instant matter as over two thousand (2000) creditors of FIAC, with possible claims not only against the FIAC estate but also potentially the SIPA liquidation proceedings of FIEC, have been identified. Movants offer that the Chapter 11 Trustee for FIAC has received responses to an informal questionnaire to all of FIAC's known potential creditors. Arthur Andersen, the Chapter 11 Trustee's accountants and financial advisor, has reviewed, correlated and prepared summaries of the questionnaire responses. (See Affidavit of Brian T. Moore). These responding creditors, numbering approximately thirteen hundred (1300) have claims totaling in excess of $108 million with individual claims ranging from amounts from less than $1,000 to in excess of $1,000,000. Based solely on these questionnaires, movants assert that it appears that approximately 97% of all investors responding have claims below $500,000 (the limit for claims for securities under SIPA), approximately 18% have claims between $100,000 and $500,000 and approximately 79% have

claims below $100,000 (the limit for claims for cash under SIPA). Under SIPA, SIPC may advance to a SIPA trustee in order to satisfy net equity claims of customers not more than $500,000 per customer, of which no more than $100,000 may be used to satisfy that portion of the claims which is for cash rather than securities. 15 U.S.C. § 78fff-3(a).

Movants continue that certification of the Class is equally appropriate as the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23, made applicable to a bankruptcy proceeding pursuant to Federal Bankruptcy Rule 7023. Movants assert that the prerequisites to a class action outlined in Rule 23(a) are satisfied as joinder of all members of the proposed class is impracticable, there are issues of law and fact common to class members, the claims of the Proposed Class Plaintiffs are typical of the Claims of the Class, and that the Proposed Class Plaintiffs will fairly and adequately protect the interests of the Class members. Further, that the proposed Class satisfies the predominance and superiority requirements of Rule 23(b).

In response, the SIPA Trustee for First Interregional Equity Corporation ("FIEC") argues that the Third Circuit has not approved the use of Class Proofs of Claim. Further, since all lease investors have been identified and provided with claim forms, and the SIPA Trustee has received responses from approximately 1500 FIAC lease investors seeking protection as customers in the FIEC SIPA liquidation proceeding, no need exists for the certification of a class of lease investors seeking customer status.

The SIPA Trustee asserts that more than 5000 claims have been filed against the SIPA Trustee asserting customer status, of which approximately 1500 constitute or contain claims based upon the purchase of leases or lease assignments. (See Affidavit of Richard Hayes, ¶2). On or about September 30, 1997, representatives of the SIPA Trustee forwarded to all lease investors a lease questionnaire. To date, the SIPA Trustee has received approximately 1300 lease questionnaires preliminarily reviewed by Deloitte & Touche. (See Affidavit of Marlo Karp). According to the SIPA Trust-

ee, of that group approximately forty percent (40%) of the lease questionnaires do not refer to any purchase of bonds, stocks, mutual funds or limited partnership interests from FIEC and appear to have been submitted by lease investors who only purchased leases or lease assignments from FIAC. (See Karp Affidavit at ¶4). While Deloitte & Touche have not completed its review, the SIPA Trustee asserts that it would appear that a sizeable percentage of lease investors never purchased securities from FIEC and only purchased leases or lease assignments from FIAC.

Alternatively, the SIPA Trustee asserts that a Class Proof of Claim is procedurally defective as it was not certified prior to the inception of the SIPA proceeding and the SIPA Trustee afforded adequate notice to investors of the Claims bar date. Finally, the SIPA Trustee maintains that the proposed Class Plaintiffs fail to meet the requirements of F.R.C.P. 23(a) and (b).

Initially, General Counsel for the Securities Investors Protection Corporation ("SIPC") objects to certification of the Class Proof of Claim on the basis that class action procedures and a class claim are in direct contravention to the specific procedures set forth in SIPA. Alternative, similarly to the SIPA Trustee, SIPC argues that class certification would serve no useful purpose, will unnecessarily increase the costs of this case and that the proposed Class Action Plaintiffs are inappropriate representatives of a class seeking "customer" status with FIEC on account of the purchase of Lease Assignments.

The Court heard oral argument on June 22, 1998. This Opinion follows.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. The issues raised by this contested matter are core proceedings as defined by Congress in 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). The within opinion constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

FIEC was a registered broker-dealer engaged primarily in the retail sale of securities and the sale of fixed-income investment products, including municipal bonds. FIEC was a member of the Securities Investor Protection Corporation. FIEC later became involved in the sale of personal property in which municipal governmental entities were the lessees. Initially, FIEC purchased leases from "brokers" and sold assignments to those leases to the public. The leasing companies which acted as brokers to FIEC would service the leases and collect payments on behalf of FIEC which, in turn, would forward the income stream from the leases to its investors.

First Interregional Advisors Corporation ("FIAC") was originally a subsidiary of FIEC created in 1992 to handle the leasing aspects of FIEC's business. Eventually, based upon regulatory concerns and the growth of the leasing operations, FIAC was spun off into a separate corporation. FIAC was not a registered broker-dealer nor was FIAC a member of SIPC.

FIAC would enter into master financing agreements and/or master lease agreements with manufacturers or dealers of office equipment and automobiles. Pursuant to these master agreements, FIAC and the manufacturer or dealer agreed that FIAC could acquire the leases or similar financial instruments. If FIAC subsequently acquired a lease, FIAC would pay the manufacturer or dealer a lump sum in exchange for title to the leased equipment or vehicle and the stream of income due under the lease or instrument.

Following its acquisition of the leases, FIAC would purport to "sell" or "assign" the leases to investors such as the Hesserts. The "sales" or "assignments" to investors were documented by confirmation slips and lease assignment documents generated by FIAC and, in the case of the assignment documents, executed by the investors and returned to FIAC. Once the investor paid FIAC, the investor would receive an executed "lease assignment" document.

On March 5, 1997, FIAC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District Of New Jersey.

As of the date FIAC filed its Chapter 11 petition, there were approximately 2000 investors who purchased what they believed to be interest in leases similar to the ones purchased by the Hesserts. The Securities and Exchange Commission (the "SEC") has alleged, and the Trustee has confirmed, that FIAC's principals engineered a massive fraudulent scheme whereby numerous interest in the same leases were sold to multiple investors. These investors comprise the majority of the creditor body of FIAC's estate.

On March 6, 1997, the SEC filed a complaint in the United States District Court for the District of New Jersey against FIAC, FIEC, and Richard Goettlich alleging, *inter alia*, that the defendants participated in a massive fraudulent "ponzi" scheme.

On March 10, 1997, following the filing by the SIPC of an Order to Show Cause, the Honorable Maryanne Trump Barry, U.S.D.J., entered an Order adjudicating that the customers of FIEC are in need of the protection afforded by the Securities Investors Protection Act ("SIPA"), 15 U.S.C. § 78 aaa *et seq* (1977). On the same day, Richard W. Hill, Esq. was appointed Trustee (the "SIPA Trustee") for the liquidation of FIEC's business.

On March 11, 1997, a meeting of FIAC's twenty (20) largest unsecured creditors was held at the Office of the U.S. Trustee. At that time, the committee was constituted and appointed by the U.S. Trustee pursuant to Section 1102 of the Code. The Committee selected and retained Cole, Schotz, Meisel Forman & Leonard, P.A. as its counsel.

On March 13, 1997, this Court entered an Order directing the appointment of a Chapter 11 operating trustee for FIAC pursuant to Section 1104 of the Code. Thereafter, Harrison J. Goldin was appointed Chapter 11 Trustee (the Chapter 11 Trustee) and duly qualified.

By Notice dated May 19, 1997, the SIPA Trustee, in compliance with Section 78fff-2(a)(1) of SIPA, advised customers and credi-

tors of FIEC by publishing notices of the proceedings in *The Wall Street Journal (National Edition), The New York Times (National Edition), The Newark Star–Ledger,* the *Miami Herald* and the *Boca Raton News* that July 18, 1997 was fixed as the final date for filing "customer claims" under SIPA, and that November 19, 1997 was fixed as the final day for filing any claims under SIPA in compliance with the time limitations set forth in Section 78fff–2(a)(3) of SIPA.

The SIPA Trustee mailed a copy of the Notice, along with a form for making a customer claim, to each person who, from the books and records of the First Interregional entities, appeared to have been a customer of FIEC with an open account subsequent to January 1, 1996. (See Certification of Notice By Publication of Hayden Smith, Jr., Esq. And Certification of Mailing of Notice by Richard W. Hill, Esq.). The Notice provided directions for filing proofs of claim, including relevant bar dates. The SIPA Trustee included in the mailing all known creditors of FIAC, including lease investors as reflected on the schedules filed with FIAC's Chapter 11 petition and on computerized lists of investors who purchased lease assignments from FIAC. *Id.* By letter dated June 25, 1997, the Chapter 11 Trustee advised FIAC lease investors of the July 18, 1997 deadline for filing "customer" claims in the FIEC SIPA proceeding and urged said investors to consider filing a claim in the FIEC proceeding prior to July 18, 1997. (See Certification of Hayden Smith Jr., Esq.).

On July 18, 1997, a motion was filed by four lease assignment investors, Thomas Hessert, Marilyn Hessert, TJH Investment Company and TJ Hessert Construction Salaried Employees Trust, proposed Class Plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure, made applicable to a bankruptcy proceeding pursuant Bankruptcy Rule 7023, seeking to approve a class proof of claim and certification of a class of all lease investors with claims against FIEC seeking the benefit of customer protection pursuant to SIPA. The application filed July 18, 1997 in support of the Motion Seeking Class Certification states "currently, claims were filed on behalf of Thomas Hessert, Mar-

ilyn Hessert, TJH Investment Corporation and TJ Hessert Construction Salaried Employees Trust who have indicated their willingness to serve as named Plaintiffs in a class action to determine the class members' rights and interests under the Securities Investor Protection Act, 15 U.S.C. § 78aaa–78 11." (*See* Application at ¶ 12).

On July 18, 1997, the Chapter 11 Trustee filed a motion to intervene in the SIPA proceeding with respect to matters pertaining to the status, allowability or validity of claims of lease investors. On April 21, 1997, the FIAC Committee filed a motion to intervene in the SIPA proceeding. On November 10, 1997, this Court issued a written Opinion granting the motions of the Chapter 11 Trustee and the Committee to intervene in the SIPA proceeding of FIEC with respect to matters pertaining to the status, allowability or validity of claims of investors who invested in leases through representatives of FIEC or who may have claims under SIPA.

On August 19, 1997, the Verified Statement of Thomas Hessert, Marilyn Hessert, TJ Hessert Construction and TJH Investment Company, proposed Class Representatives, pursuant to Rule 2019(b) of the Federal Rules of Bankruptcy Procedure was filed. Attached as Exhibit "A" to the Rule 2019(b) statement was a listing of each proposed member of the putative class. By the Verified Statement it is asserted that each member of the putative class arises from a transaction whereby each member purchased interests in lease(s) with governmental entities and/or municipalities for office equipment and/or vehicles purportedly from FIAC. The Proposed Class Representatives assert that each member of the proposed class is a customer of FIEC with claims for cash and/or securities and should be entitled to the protection of SIPA.

On May 26, 1998, the SIPA Trustee filed his brief in Opposition to the Motion of Class plaintiffs for the Certification of a Putative class of Investors in the SIPA proceedings of FIEC. Thereafter, on June 4, 1998, the SIPC filed its brief in Opposition to the Application in support of the motion seeking Class Certification. On June 17, 1998, the Hesserts, the Chapter 11 Trustee for FIAC and the Official

Committee of Unsecured Creditors of FIAC filed a memorandum in further support of the present motion.

### DISCUSSION

■ The proposed Class Plaintiffs, joined by the Chapter 11 Trustee of FIAC and the Official Unsecured Creditors Committee of FIAC, move to file a class proof of claim on behalf of the greater than 2000 investors of FIAC who have filed proofs of claim with the SIPA Trustee. In response, the SIPA Trustee and the SIPC argue that such a class proof of claim is unwarranted and, moreover, the Third Circuit has not approved the use of class proofs of claims. The Court observes that while no specific provision of the Bankruptcy Code or Rules authorizes the filing of a class proof of claim, *See* 2 NEWBERG ON CLASS ACTIONS, THIRD EDITION, § 20.04 (1992), Congress has provided in Bankruptcy Rule 7023 that "Rule 23 FR CivP applies in adversary proceedings" *See In re Zenith Labs.*, 104 B.R. 659 (D.N.J. 1989). While, as the SIPA Trustee and SIPC offers, the Third Circuit, in a case involving a SIPA liquidation decided under the former Bankruptcy Act, expressed doubts about certifying class in bankruptcy case, see *Securities and Exchange Comm'n. v. Aberdeen Securities Co.*, 480 F.2d 1121, 1128 (3d Cir.), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); *see also S.E.C. v. Securities Planners Ltd. Inc.*, Civil Action No. 71–656–M (D.Mass.1972), the vast majority of courts who have recently considered the issue have concluded that class proofs of claim are now regularly permitted in a bankruptcy proceeding. *See e.g. In re Zenith Labs.*, 104 B.R. 659, 662 n. 2 (D.N.J. 1989); *see also In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y.1997); *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16 (Bankr.E.D.Pa. 1995); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir.1989); *In re Charter Co.*, 876 F.2d 866 (11th Cir.1989); *In re Chateaugay Corp.*, 104 B.R. 626 (S.D.N.Y.1989); *Matter of American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988). To automatically disallow a class proof of claim "would effectively prohibit the use of class actions in bankruptcy altogether." *Zenith Labs.*, 104 B.R. at 663.

Accordingly, this Court will consider the merits of the Movants motion to file a class proof of claim and for certification of the putative class.

■ When considering to grant a motion for class certification, the role of the court is to expeditiously determine whether the Rule 23 requirements for class certification have been met. *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr.S.D.N.Y.1997). Preliminarily, the Court is satisfied that movants have made a timely motion for class certification at the time of the filing of the class proof of claim. *See e.g. Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 370; *Thomson McKinnon Securities Inc.*, 150 B.R. 98, 100–101 (Bankr. S.D.N.Y.1992); *Amdura Corp.*, 170 B.R. at 449. (Bankruptcy Rule 9014 authorizes a bankruptcy court to exercise its discretion to invoke Bankruptcy Rule 7023 and, by inference, F.R.Civ.P. 23 at any stage in a contested matter, including at the stage of filing a proof of claim). The right to proceed as a class claim is not automatic. *Id.* at 369. The individuals seeking class certification "have the burden of proving that they are entitled to class certification." *Reid v. White Motor Corp.*, 886 F.2d 1462, 1470–71 (6th Cir.1989) (citing *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976)). Rule 23 requires that an actual proof of claim must be filed with the court identifying both the putative class and the existence of a class representative. *Id.* The class representative "must be a member of the class he claims to represent." *Id.* (citations omitted). The class representative must then petition the bankruptcy court to apply Rule 7023. *Id.* (citation omitted). The court may then exercise its discretion under Bankruptcy Rule 9014 whether to apply Rule 23 to the contested matter. *Zenith Labs.*, 104 B.R. at 664.

■ In the instant matter, a class proof of claim identifying both the putative class and the existence of a class representative has been filed by the Hesserts. The SIPA Trustee and SIPC, relying on *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16 (Bankr.E.D.Pa.1995), argues that the class

proof of claim and class certification are procedurally defective as they were not certified prior to the SIPA proceeding or the Chapter 11 proceeding of FIAC or pending for a considerable period of time prior to the SIPA proceedings commencement and because the SIPA Trustee afforded adequate notices to Investors of the Claims bar date. This Court disagrees. Such "virgin" classes have been upheld contrary to the SIPA Trustees and SIPC's extremely broad interpretation of *Sacred Heart. See e.g. In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365 (Bankr. S.D.N.Y.1997) (stayed class action commenced just before filing of debtor's Chapter 11 petition); *In re Amdura Corp.,* 170 B.R. 445 (D.Colo.1994) (debtor commenced Chapter 11 upon filing of class action complaints and class was subsequently certified 6 months post-petition). Moreover, as the Hesserts, joined by the FIAC Trustee and FIAC Committee argue, a pre-petition class action could not have been initiated as the fraudulent activities were not unveiled until *after* the SIPA proceedings were commenced.

The Hesserts, in this Court's opinion, are a member of the class they claim to represent. While the SIPC argues that the Hesserts are inappropriate representatives of the class seeking "customer" status of FIEC, this Court does not agree. The Hesserts are the typical member of the putative class, having purchased interests in municipal leases from FIAC and the being victimized by the fraudulent "ponzi" scheme of the Goettlichs', the principals of both FIEC and FIAC. A verified statement by the Hesserts requesting this Court to apply Rule 7023 was filed. As District Judge Harold A. Ackerman noted in

*Zinberg v. Washington Bancorp, Inc.,* "[m]any Courts have emphasized the necessity for the Rule 23 class suit in security fraud actions." *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J.1990) (citations omitted). Accordingly, the Court will exercise its discretion and apply the requirements enumerated in Rule 23 to determine whether the proposed Class Plaintiffs are entitled to class certification.[1]

Turning to Fed.R.Civ.P Rule 23, the Court notes that subsection (a) outlines the prerequisites for a party seeking to commence a class action suit. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative party will fairly and adequately protect the interests of the class.

FED.R.CIV.PROC. 23(a).

Applying these prerequisites to the instant case, the Court finds that the proposed Class Plaintiffs satisfies each of these prerequisites. First, addressing numerosity, what constitutes impracticability depends on the facts of each particular case and no arbitrary rules have been fashioned by the courts. *See* 7A, Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d, § 1762; *Zinberg,* 138 F.R.D. at 405. "Impracticability does not mean impossibility but only the difficulty or inconvenience of joining all mem-

---

1. Rule 7023 of the Federal Rules of Bankruptcy Procedure make Rule 23 applicable to adversary proceedings. Federal Bankruptcy Rule 9014, which governs contested matters, expressly incorporates many of the individual rules comprising Part VII of the Federal Bankruptcy Rules, but omits Rule 7023. Nevertheless, the bankruptcy court, in its discretion, may direct the application of any other rule of Part VII at "any stage in a particular matter". *See Woodward & Lothrop Holdings Inc.,* 205 B.R. 365, 369 (Bankr. S.D.N.Y.1997); *Zenith Labs.,* 104 B.R. at 663. Arguments made here by the SIPA Trustee and the SIPC that Bankruptcy Rule 7023 is not applicable in a SIPA liquidation are not compelling. SIPA Section 78 fff(b) provides:

Application of Title 11:
To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapter I and II of chapter 7 of title 11. For the purpose of applying such title in carrying out this section, a reference in such title to the date of the filing of the petition shall be deemed to be a reference to the filing date under this chapter.
Accordingly, the provisions of Bankruptcy Rule 7023 may be applied in this case.

bers of the class." *Zinberg*, 138 F.R.D. at 406 (citations omitted).

■ The proposed Class Plaintiffs have clearly established the proposed class is so numerous that joinder would be impracticable. All parties agree that the number of Investors total over 2000 and are geographically dispersed. The numerosity requirement in the Court's opinion is clearly satisfied.

■ Rule 23(a)(2) requires only that "questions of law or fact common to the class" exists when determining the commonality prerequisite. Fed.R.Civ.P. 23(a)(2); *Zinberg*, 138 F.R.D. at 405 (citations omitted). Rule 23(a)(2) is satisfied "if there are *some* questions of law or fact common to the class." *Zinberg*, 138 F.R.D. at 406 (citing *Vargas v. Calabrese*, 634 F.Supp. 910, 918 (D.N.J.1986) (emphasis in original)). "It is not necessary that all factual or legal issues raised by the case concerns each class member." *Zinberg*, 138 F.R.D. at 406 (citations omitted).

■ A common question of law or fact among the class members is clearly demonstrated in the instant matter. Each Class members claim arises from a purchase of an interest in a municipal lease from the First Interregional Entities through FIAC. The Investors acquired their interest by purchasing the leases from FIAC by either 1) transferring funds from their existing FIEC account, or, 2) payment via check or wire transfer made payable to "First Interregional" or one of the First Interregional Entities. Each Class member was a victim of the Goettlichs' "ponzi" scheme and whether the investors were induced by the Goettlichs' fraud is common to each Class member. Also common to each Class Member are the legal issues of whether they were "customers" of FIEC, as a broker/dealer and whether the leases or lease interests they purchased constitute "securities" as these terms are defined by SIPA.

■ The third prerequisite under Rule 23(a) is that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3); *Zinberg*, 138 F.R.D. at 406

citing *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). While similar to the commonality requirement, "a named plaintiff's claims are 'typical' if they arise from 'the same course of conduct' as those of the class generally." *Id.* at 406–07 (quoting *Epstein v. Moore*, 1988 WL 62213 (D.N.J.1988)). As Judge Ackerman observed, "the Third Circuit has explained, the Court must examine whether 'the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Zinberg*, 138 F.R.D. at 407 (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.), *cert. denied sub. nom.*, *Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985)). "The focus is on the defendant's behavior, not that of the plaintiff, and on whether the class can point to the same general, over-all course of fraudulent conduct." *Zinberg*, 138 F.R.D. at 407 (citation omitted).

■ The proposed Class Plaintiffs and each member of the proposed class alleges that they were victimized by the fraudulent "ponzi" scheme orchestrated by the Goettlichs through the FIEC and FIAC entities. The claims of each of the Class members arise from the same fraudulent practices, events and course of conduct. Contrary to the SIPA Trustee's assertion that the proposed Class Plaintiffs have oversimplified and incorrectly characterized the nature of the claims of the investors, the Court finds that the proposed Class Plaintiffs satisfy the typicality prerequisite.

■ The fourth and final prerequisite under Rule 23(a) is that the representative party must "fairly and adequately protect the interest of the class." Fed.R.Civ.P. 23(a)(4); *Zinberg*, 138 F.R.D. at 407.

Adequate class representation depends on two factors: a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation and b) the plaintiff must not have interest antagonistic to those of the class.

*Zinberg,* 138 F.R.D. at 407–08 quoting *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

 The skills and experience of counsel has been stressed in the decision that have considered the issue of whether an action will be vigorously prosecuted. *Zinberg,* 138 F.R.D. at 408 (quoting *Lewis v. Curtis,* 671 F.2d 779, 788–89 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982)). The proposed Class Plaintiffs have engaged the firm of Rabinowitz, Trenk, Lubetkin & Tully to represent them. The members of this firm are well known to this Court and are experienced and skilled practitioners who are more than qualified to conduct the proposed litigation. Similarly, the firm of Sills Cummis which represents the Chapter 11 Trustee of FIAC and the law firm of Cole, Schotz, Meisel, Forman & Leonard as Committee counsel, are equally experienced and skilled and will be able to offer valuable assistance to the proposed Class counsel.

 With respect to the requirement that the plaintiff not have an interest antagonistic to those as a class, the burden is on the defendants "to prove the plaintiffs representation will be inadequate." *Shamberg v. Ahlstrom,* 111 F.R.D. 689, 693 (D.N.J.1986). Defendants have not asserted that the Hesserts have an interest antagonistic to those as a class nor does this Court have any reservation that the proposed Class Plaintiffs will not protect the interests of the class. Accordingly, the fourth prerequisite of subsection (a) is satisfied.

Having concluded that the proposed Class Plaintiffs have satisfied the four prerequisites of Rule 23(a), the Court will focus on subsection (b) of Rule 23.

 Once the court is convinced that the prerequisites announced in 23(a) have been satisfied, the court must additionally consider whether one of the three factors outlined in Rule 23(b) is present before a class action is maintainable.[2] The proposed Class Plaintiffs seek certification under Rule 23(b)(3) arguing that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

 An action under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be best served by settling their differences in a single action." 7A, Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d, § 1777 (citing *Bennett v. Gravelle,* 323 F.Supp. 203, 218 (D.Md.1971)). When conducting an inquiry under Rule 23(b)(3), the court "must identify the legal and factual issues, common and diverse, and the (sic) determine whether the common issues predominate." *Zinberg,* 138 F.R.D. at 409 (citation omitted). Predominate is not automatically equated with "determinative"

---

2. Rule 23(b) provides in its entirety that:

(b) Class Actions Maintainable.
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.
FED.R.CIV PROC. 23(b).

or "significant," rather "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3)" 7A, Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d, § 1778 (citations omitted).

The common factual and legal issues that arise in this matter, namely whether the investors were "customers" of FIEC and whether the they were all victims of a massive "ponzi" scheme orchestrated by the Goettlichs, are the central issues to each and every class member and clearly predominate over the matter. While some commentators have suggested that in most situations when considering the applicability of a class action in a bankruptcy context that "the claims of the creditors will be sufficiently disparate so that the common question of law or fact will not predominate over the individual issues raised by the claimants" *see* 7A, Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d, § 1754, such is not the case in the instant matter involving the massive fraudulent scheme. Accordingly, the Court concludes that common issues of fact and law do predominate in this action.

Having found that a common issues of fact and law do predominate in this action, the Court must consider whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) requires the Court to find that "the objectives of the class action procedure really will be achieved in the particular case." 7A, Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d, § 1779; *see Zinberg*, 138 F.R.D. at 410. Possible alternatives to a class action include joinder, "test cases" (as advocated by the SIPA Trustee and SIPC) or individual causes of action. Rule 23(b)(3) itself contains a non-exhaustive list of factors the court may consider when determining whether the class action is the superior means of resolving the issues. *See* 1 *Newberg on Class Actions* § 4.28 (3d ed.1992). These factors include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3).

The SIPA Trustee and SIPC argues that selected "test cases" are a more appropriate method for resolving the issues at hand. The SIPA Trustee cites to *In Matter of Bevill, Bresler & Schulman, Inc.*, 67 B.R. 557 (D.N.J.1986) where the parties consensually selected several "test case" to be adjudicated by the court on motions for summary judgment. The SIPA Trustee argues that such a procedure should be utilized here. In response, the proposed Class Plaintiffs assert that a class action is governed under the Rules of Civil procedure and the Federal Bankruptcy Rules while "test cases" are not subject to any "established" procedures. The court would have at its discretion how these cases are tried. Such a solution raises possible due process concerns as well as leaving uncertain the stare decisis effect of such decisions. Such risks, in the proposed Class Plaintiffs opinion, does not outweigh the benefits that "test cases" provide over a class action. This Court agrees. Moreover, the Court finds no difficulties in the management of the class action.

Additionally, SIPC argues that a class action certification and a class claim will unnecessarily increase the cost of this case. Given the SIPC support of the proposal of trying several "test cases" rather than certification of the class, this Court finds SIPC's position unconvincing. If the Court adopted the proposal to try several "test cases" rather than the single class action, the costs incurred could be higher to all parties and the court's docket would become more crowded. Accordingly, the Court finds the SIPC's argument unavailing.

The SIPA Trustee and SIPC both argue that the putative unnamed class members in this case have received actual or constructive notice of the claims bar date, which bar date has passed, and that a class proof of claim

would unjustifiably extend the bar date with respect to lease investors who have not filed timely proofs of claims, and is unnecessary. The bankruptcy court in *In re Sacred Heart Hospital of Norristown,* 177 B.R. 16, 22 (Bankr.E.D.Pa.1995) recognized that even if the requirements of Fed.R.Civ.P. Rule 23 are met "the bankruptcy court must weigh the issue of whether it is appropriate to give the class members what may amount to an additional opportunity to meet an otherwise applicable bar date". *Id.* at 22. The *Sacred Heart* court noted that if the unnamed class members are largely a group which a debtor has refused to notify individually, or if they are in large part unknown creditors, then the class device may provide the only form of notice to such parties and be advisable to utilize. *Id.* On the other hand, if the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable. *Id.* See also, *In re Jamesway Corp.,* 1997 WL 327105, *5 (Bankr.S.D.N.Y., June 12, 1997); *In re Bicoastal Corp.,* 133 B.R. 252, 255 (Bankr. M.D.Fla.1991).

In response to this objection, the movants suggest that this Court could define the class as limited to those individual claimants who had filed individual proofs of claim within the bar date. (See Memorandum of Law in Reply to Opposition Memorandum of SIPA Trustee and SIPC and in Further Support of Motion for Order Approving Property of Class Claim and Certifying the Class). In response to these arguments, this Court will not place such limitation on the defined class. This Court here agrees with the analysis of the bankruptcy court in *In re Wang Laboratories, Inc.,* 164 B.R. 401, 403 (Bankr.D.Mass. 1994), which Court noted that the Eleventh Circuit has called "the requirement for individual claims 'illogical and contrary to important class action policy considerations'." *Id.* at 403, citing *In re Charter Co.,* 876 F.2d 866, 871 (11th Cir.1989).

The *Wang Laboratories* court so noted:

In *Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.),* 817 F.2d 625 (10th Cir.1987), the Tenth Circuit held that "class action procedures can be employed in a bankruptcy proceeding only to consolidate claims that have already been properly filed". *Id.* at 632. This position is based upon the requirement of Fed. R.Bankr.P. 3001(b) that, with certain exceptions not relevant here, "a proof of claim shall be executed by the creditor or the creditor's authorized agent" and the Court's conclusion that "a class representative cannot be considered the authorized agent of all of the creditors in a putative class". *Id.* at 631. This last element is supported by Fed.R.Bankr.P.2019, requiring one who would represent more than one creditor demonstrate authority so to do, in a manner impossible for the putative agent of an amorphous class to satisfy. Because of the failure, "the court may refuse to permit that [putative agent] to be heard further or to intervene in the case." Fed.R.Bankr.P.2019(b).

The Seventh Circuit rejected *Standard Metals,* holding that Rule 2019 is satisfied by the safeguards inherent in the procedure itself:

"Not every effort to represent a class will succeed; the representative is an agent only if the class is certified. Putative agents keep the case alive pending the decision on certification.... If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim; the putative agent never obtains 'authorized agent' status. If the court certifies the class, however, the self-appointed agent, has become 'authorized', and the original filing is effective for the whole class (the principals)." *American Reserve Corp., supra* at 493.

*Id.* at 403.

### CONCLUSION

For the foregoing reasons, the Motion of the proposed Class Plaintiffs seeking the Propriety of a Class Claim and the Certification of the Putative Class with the Hesserts as the class representatives thereof, is GRANTED.

The class so certified shall include all investors who purchased interests in leases and/or lease assignments with governmental

entities and/or municipalities for office equipment and/or vehicles, or similar leases and/or lease assignments, from representatives of FIAC and/or FIEC with claims against FIEC seeking the benefit of customer protection pursuant to SIPA.

Notice shall go to the Class as shall be fixed by further order of this Court.

An order shall be submitted in accordance with this Opinion.